# Richmond

ROGER DANIELS V. COMMONWEALTH OF VIRGINIA.

February 20, 1939.

Record No. 2078.

Present, All the Justices.

The opinion states the case.

*Arthur C. Stickley, II,* and *Anna F. Hedrick,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Assistant Attorney-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Roger Daniels, a married man who lived with his wife and three small children, was convicted of arson and has appealed.

The burning occurred on the night of September 5, 1937. The fire was of incendiary origin; gasoline and oil had been spread upon the basement floor and set on fire. None of the family was at home on that occasion but had gone down to the bay shore for the weekend. They left late Saturday night, and the fire occurred on Sunday night or early Monday morning, which was Labor Day. The house itself was owned jointly by the husband and wife.

Edward Honesty, a colored boy, had worked for Daniels. He testified that on Saturday afternoon Daniels told him that he might take a radio, clock and lamp, then in the home, "because this house is going to be burned down and you might as well have them," and that the burning was to be on Sunday night. Honesty did carry away these articles, and his statement was first corroborated by Robert Shorter, another colored boy, but this corroboration Shorter afterwards repudiated.

Daniels was a contractor. Edgar Heishman and William Sterns, two young white men, had worked for him and apparently were his friends. Heishman said he went to the

home on Saturday afternoon to be paid off. Daniels then asked him if he would like to make $50. The result of their conversation was that Daniels promised to pay him $50 to burn down the home. Sterns testified that he went to the defendant's home on that afternoon also, his purpose being to see if there was any work on hand for him. On that occasion Daniels promised him, too, $50 to burn down the home. These two men did set it afire around twelve o'clock on Sunday night. Some damage was done but not much; the fire was soon extinguished by the fire department. They were arrested, indicted, tried, confessed and were convicted. Their confessions appear to have been freely made and without inducement. Daniels, testifying on his own behalf, denied that he had ever employed them for any such purpose or that he had in any wise indicated to them his desire that the home be burned.

At that time there was due to the Home Owners Loan Corporation $2,067.60, secured by a trust deed. Payments were in arrears and some taxes were unpaid, so that the lien indebtedness binding this property at that time amounted to something like $2,200. There was also due about $900 on a heating plant put in about eight months before the fire.

The home was insured for $2,500, payable to the Home Owners Loan Corporation as its interest might appear. There was another policy of $500 which covered household goods, etc.

No motive, beyond the collection of insurance, has been suggested. Daniels contends that no such motive has been shown and for this reason: He said that the house was worth considerably more than the face of the insurance; that he valued it at $3,850, had listed it for that sum with a real estate agent, and had been offered $3,500, which he had refused. That offer was made on the 10th of June, 1937. Under it he was to be paid $100 in cash and the balance in monthly payments of $33 each, the purchaser to assume the trust deed debt.

■ This offer of purchase is evidenced by a writing copied into the record. It thus appears that the jury has found that Daniels, less than three months after he had refused $3,500 for this property, wished to burn it down to collect $2,500 of insurance. The lien indebtedness thereon amounted to $2,200, which would have left $150 each to himself and to his wife. If we add to the $2,500 policy the $500 policy which covered personalty, he might have collected $800 after lien debts had been paid, which would have given him and his wife each $400, but there was due on account of the heating plant $900. It is fair to assume that this creditor would have intervened to collect his debt out of the insurance money. The chances were, therefore, that neither Daniels nor his wife would have gotten anything, and so from the evidence it would appear that Daniels attempted to burn down his home for insurance which he must have known would have been swallowed up by his debts. At the most, he could have collected but $3,000, and to that end he undertook to burn down a house for which he had just been offered $3,500. It is an incredible story. Certainly it is an improbable story, made more so by the fact that Daniels is said to have confided his purpose to three men, to one of whom he gave certain articles of personalty because the house was to be burned. Had he entertained such a felonious intent, the chances are that he would have removed his chattels, or those which he deemed of value, rather than give them to this negro boy, together with such an explanation of the reason for the gift. So far as this record goes, Daniels appears to have been a man of good reputation. Notwithstanding the weight to which juries' verdicts are justly entitled, we think this account is too improbable to be accepted.

This house, as we have seen, was the dwelling house of Daniels and his wife and was owned by them jointly.

■ Common law arson is thus defined by Blackstone, Vol. IV, section 254:

"Arson, *ab ardendo,* is the malicious and wilful burning of the house or outhouse of another man."

To constitute a crime, the house must be a dwelling house. This definition covers outhouses and other structures appurtenant thereto and within the curtilage (4 Am. Jur., section 14), although it may by statute be extended to an indefinite number of other structures. Since it must be a dwelling house, it does not cover an uncompleted and unoccupied building intended for that purpose. It is an offense against the security of the habitation and has reference to possession rather than property. One who burns a house on his own land, occupied by his tenant, is guilty of this offense. *Erskine* v. *Commonwealth*, 8 Gratt. (49 Va.) 624. He who burns his own dwelling is not guilty of this particular offense. Wharton's Criminal Law, Vol. II (11th Ed.), section 1051.

So much of our statute as is relevant reads:

"If any person, in the night time, maliciously burn, or by the use of dynamite, or nitro-glycerine, or any other explosive substance, maliciously destroy, in whole or in part, or cause to be burned or destroyed, or aid, counsel or procure the burning or destruction of any (the) dwelling house (of another), whether the property of himself or of another, * * *," he is guilty of arson. Acts of Assembly 1932, ch. 366, p. 721; Code, section 4428.

The Commonwealth concedes that this statute does not change the common law. Since one at common law and under the statute who burns his own home is not guilty of this offense, we are to determine if any change has been brought about by the fact that the home was owned and occupied by the husband and wife.

"The rule at common law was well settled that where a husband and wife were in rightful possession and jointly occupying property belonging to one of them, the other would not be guilty of arson in burning the property. This was because, at common law, arson was an offense against the possession as such, and not against the property, and also for the reason that the husband and wife were regarded as one, and therefore the property occupied by them could

not be deemed the property of 'another'." Note 17 A. L. R. 1173.

To the same effect is *Williams* v. *State,* 177 Ala. 34, 58 So. 921, Ann. Cas. 1915A, 584, which quotes with approval this statement from *State* v. *Hannett,* 54 Vt. 83: "If the occupant is in possession rightfully, and burns the house, he can not in legal sense be guilty of burning the dwelling of another; he burns his own dwelling house." *Williams* v. *State,* 177 Ala. 34, 58 So., page 922, Ann. Cas. 1915A, page 587 and note.

In *Kopcyznski* v. *State,* 137 Wis. 358, 118 N. W. 863, 16 Ann. Cas. 865, it was held that the rule is not changed by statute which defines arson in language substantially the same as that of the common law, although it was said in that case that a married man can commit the crime of arson by burning the home of his wife with whom he was not living and from which he had been excluded.

The leading case on this subject is *Snyder* v. *People,* 26 Mich. 106, 12 Am. Rep. 302. The opinion was written by that great judge, Thomas M. Cooley. It there appears that Snyder and his wife lived in a home owned by the wife. The court instructed the jury that a husband might be convicted of arson in burning his wife's dwelling house, though he resided with her. On that instruction the defendant was convicted and because of it the verdict of conviction was set aside. Judge Cooley said that unless the rule is changed by statute, "if the husband, living with his wife, has a rightful possession jointly with her of the dwelling-house which she owns and they both occupy, he cannot, by common-law rules, be guilty of arson in burning it." He said that statutes of the character of that under review dealt with property rights and that none of them operate upon the family relation or take from the husband marital rights which do not pertain to property; that he is still the head of the house and is charged with the duty of supporting her, and that the unity of man and wife in their marriage relations has not been broken. "If, therefore, the husband shall be guilty of the great wrong to his wife and family, of setting fire to

the house they inhabit, he is no more guilty of arson in so doing than the wife was at the common law for a like wrong to the dwelling-house of the husband. The case is a very proper one for a penal statute, but none has yet been enacted to meet it. The house, in legal contemplation, as regards the offense under consideration, is the dwelling-house of the husband himself," although he said that this rule did not apply where the family relation is broken up.

The general rule is thus summed up in 6 C. J. S., Arson, 732, § 10:

"Pursuant to the general rule previously discussed in this section, that one in possession of his own house is not guilty of arson in burning it, it is not arson at common law for either husband or wife to burn the house of the other, since in legal contemplation they are one person, provided they are living together in the dwelling at the time and are not separated or in the act of separating." See also, 4 Am. Jur. 98.

█ Multiplication of authorities is unnecessary. So far as we are advised, this rule is nowhere challenged. It is equally certain that it may be modified by statute and may be extended to cover acts not theretofore within the common law definition. Such modifications, where they exist, are of little aid unless the statutes which bring them about are in substance like those which we are called upon to construe.

These cases bear directly or indirectly on this subject:

The late case of *State* v. *Zemple* (Jan. 10, 1936), 196 Minn. 159, 264 N. W. 587, 588, holds that the burning of a dwelling house owned by the wife and occupied by the wife and husband may be arson. This is the Minnesota statute, Mason's Minn. St. 1927:

"10310. Every person who * * *

"2. Shall wilfully burn or set on fire in the nighttime a dwelling house * * * shall be guilty of arson in the second degree."

"10313. To constitute arson, it shall not be necessary that another person than the defendant should have had ownership in the building set on fire."

The court, in the course of its opinion, said:

"Several states hold that under their statutes a husband cannot be guilty of arson for the burning of a dwelling owned by his wife if it is their joint abode. However, it will be noticed that those statutes differ markedly from the one in this state. They all speak of the crime as being the willful burning of the dwelling of 'another.' See Mich. Comp. Laws 1857, section 5745; *Snyder* v. *People,* 26 Mich. 106, 12 Am. Rep. 302; Wis. Laws 1898, section 4399; *Kopcyznski* v. *State,* 137 Wis. 358, 118 N. W. 863, 16 Ann. Cas. 865. Other jurisdictions in which the statutes provide that 'any person who shall willfully burn any dwelling house' hold that a defendant may be guilty of arson for the burning of his wife's dwelling even if it is their joint abode. N. H. Gen. Stats. 1867, c. 262, sec. 1; *State* v. *Hurd,* 51 N. H. 176; see 4 Stat. 448 (Act Cong. 1831, c. 37, sec. 3) ; *United States* v. *McBride,* 7 Mackey (18 D. C.) 371."

In *Williams* v. *State,* supra, it appears that Williams burned an uninhabited dwelling belonging to his wife. He was convicted. The Alabama statute reads:

"Code 1907, sec. 6301, provides that any person who willfully sets fire to or burns the property of his wife or her husband or his landlord without the express consent of the owner to burn such property shall be guilty of arson * * * "

In *State* v. *Shaw,* 79 Kan. 396, 100 P. 78, 79, 131 Am. St. Rep. 298, 21 L. R. A. (N. S.) 27, a conviction was sustained. The statute reads:

" 'Every person who shall wilfully set fire to or burn in the nighttime any house, building, barn, stable, boat or vessel of another * * * not the subject of arson in the first or second degree, shall on conviction be adjudged guilty of arson in the third degree.' (General Statutes of Kansas (1901) section 2046.)"

While this case, in a general way, upholds the Commonwealth's contentions, it will be seen that the Kansas statute was designed primarily for the protection of property as such and not as a habitation. The court further said that there were no common law offenses in Kansas.

In *Garrett* v. *State,* 109 Ind. 527, 10 N. E. 570, Garrett's conviction was sustained. He burned a house occupied by him and his wife as their dwelling house and which belonged to the wife. The Indiana statute, Rev. St. Ind. 1881, §1927, declared that:

"Whoever willfully or maliciously burns, or attempts to burn, any dwelling-house or other building, finished or unfinished, occupied or unoccupied, whether the building be used or intended for a dwelling-house or for any other purposes, * * * the property so burned being of the value of twenty dollars or upwards, and being the property of another, * * * is guilty of arson, * * * "

The last vestige of woman's marital disabilities, as affecting property rights, appears to have been wiped away by *Commonwealth* v. *Rutherfoord,* 160 Va. 524, 169 S. E. 909, 90 A. L. R. 348. But, as was pointed out by Judge Cooley, a married woman's legal right to own and dispose of real estate is little more than the equitable right which she theretofore had. Indeed, at common law she might purchase it without the consent of her husband and that transaction stood unless it was disaffirmed by some act of the husband declaring his dissent. 2d Black. Com. Book II, section 394. And this was the law in Virginia long before the Smith's Married Women's Act and its amplifications came into effect. As we have seen, so far as dwellings are concerned, the statute under review is but declaratory of the common law. Of course the Legislature might enlarge it to cover cases like that under review, and this is just what has been done. See Acts of Assembly 1938, ch. 154, p. 215. The words (the) and (of another) have been deleted. It now reads, "if any person, in the night time, maliciously burn, * * * any dwelling house, whether the property of himself or of another, * * * in which persons usually dwell," he is guilty of arson. We have here a legislative declaration to the effect that such an amendment was necessary to cover the case in judgment.

From the standpoint of the family, the husband is still the head of the house. He is charged with her support.

Husband and wife, subject to certain exceptions, can not be compelled to testify against each other in criminal cases. Code, section 6211.

A husband has a right to go upon his wife's premises if jointly occupied by them, not because he has any property rights therein but because he has a right of access to her growing out of marital relations. *Edmonds* v. *Edmonds*, 139 Va. 652, 124 S. E. 415.

A husband who assaults his wife is not liable in damages therefor. *Keister's Adm'r* v. *Keister's Ex'rs*, 123 Va. 157, 96 S. E. 315, 1 A. L. R. 439. Such relief as she may have is confined to suit money, divorce and alimony.

When this case was decided, the statute of 1899-1900, ch. 1139, p. 1240, was in effect. As it appears in the Code of 1919, section 5134, there has been added to it this amendment:

"In an action by a married woman to recover for a personal injury inflicted on her, she may recover the entire damage sustained, notwithstanding the husband may be entitled to the benefit of her services about domestic affairs; and no action for such service shall be maintained by the husband."

This addition, however, did not affect the rule laid down in the *Edmonds Case,* as appears from the revisers' note, but was intended to change the law as announced in *Richmond Railway & Electric Co.* v. *Bowles,* 92 Va. 738, 24 S. E. 388, and kindred cases.

However title may read, in Virginia by common consent the home of a still united couple is regarded as the husband's dwelling place. Within the law of arson, it is not the dwelling house of another.

Plainly at common law in Virginia the defendant is not guilty of arson. Crimes are not established by implication, and where a statute is relied upon, the Commonwealth must put its finger upon the power conferred. That it has not done. From the logic of Judge Cooley, there is no fair avenue of escape.

This case, which might have been of importance, is now of importance only to the accused; this due, as we have seen, to the amended statute.

The weight of authorities is with the accused, confirmed, as we have seen, by statute.

The judgment of the lower court must be reversed, and it is so ordered.

*Reversed.*