STATE of Maine

v.

Roger DENIS.

Supreme Judicial Court of Maine.

April 25, 1973.

———◆———

Fernand LaRochelle, Asst. Atty. Gen., Crim. Div., Augusta, for plaintiff.

Fitzgerald & Donovan by Daniel R. Donovan, Bath, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

By indictment returned in the Superior Court (York County) defendant, Roger Denis, was charged with having burned, on or about August 22, 1971, the dwelling house of

". . . Norma Denis, located on Sand Pond in . . . Limington, Maine, property of the said Norma Denis."

The indictment, as it appears in the record before us, bears the caption, "Indictment for Violation of 17 M.R.S.A. Section 161 (Arson (First Degree))." [1]

The defendant moved to dismiss the indictment (on grounds identified and discussed hereinafter). The presiding Justice denied the motion to dismiss. Upon motion of the aggrieved defendant, and in recognition that the matters covered by the interlocutory denial of the motion to dismiss "ought to be determined by the Law Court before any further proceedings are taken . . .", the presiding Justice, pursuant to Rule 37A(b) M.R.Crim.P., ordered the case reported to this Court for appropriate resolution of the questions raised.

We accept as an additional facet of the case a statement offered by the presiding Justice to assist in a full delineation of the issues, as follows:

". . . the parties have filed a written stipulation that on the date of the alleged offense the Norma Denis named in the indictment as the owner of the burned property was the wife of the defendant Roger Denis. Because of the complexity and expense of the trial of an arson case and to permit the resolution of the question of law raised by the defendant's motion to dismiss the court permitted the filing of said stipulation and will accept as a fact for the purposes of this motion to dismiss that Nor-

---

1. We mention this fact in light of a statement in the able opinion of the presiding Justice that, as it appeared before him, the indictment contained a caption reference to 17 M.R.S.A. § 152, a section which was repealed in 1967. Because he saw a Section 152 statutory reference, the presiding Justice took the precaution of stating explicitly that he would ignore the caption and consider the indictment as brought under 17 M.R.S.A. § 161 (as added in 1967). He relied on the provisions of Rule 7(c) M.R.Crim.P., that: "Error in the citation of a statute or its omission shall not be grounds for the dismissal of the indictment . . . if the error or omission did not mislead the defendant to his prejudice."

ma Denis named as the owner of the burned property in the indictment was at the time of the alleged offense the wife of the defendant Roger Denis."

Defendant's motion to dismiss crystallizes as the questions to be decided:

(1) is 17 M.R.S.A. § 161 et seq. unconstitutionally vague in violation of the Fourteenth Amendment of the United States Constitution;

(2) if 17 M.R.S.A. § 161 et seq. is not unconstitutionally vague, is it of no effect in view of the wording of § 163;

(3) if 17 M.R.S.A. § 161 is the controlling section, was it a crime under that statute on August 22, 1971 for a husband to burn his own or his wife's property?[2]

Addressing the first problem, we note that the "vagueness" attributed to Section 161 arises not because of its provisions internally considered but only as taken in interrelationship with Section 163. Section 161 specifies that arson is of the "first degree", punishable "by imprisonment for not more than 20 years" if the property burned is (1) ". . . property of [the actor] himself or of another" and is (2)

"any dwelling house, mobile home or house trailer, . . ., or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, . . .."

Section 163 prescribes that arson exists in the "third degree", punishable ·

". . . by a fine of not more than $2,000 or by imprisonment for not more than 3 years, or by both",

2. By P.L.1967, Chapter 410 § 1 the legislature repealed R.S.1964 §§ 151–157 and embodied the law of Maine as to the crime of arson in provisions here controlling as follows:

"§ 161. *First degree* Any person who willfully and maliciously (1) sets fire to (2) burns (3) causes to be burned or (4) aids, counsels or procures, the burning of any dwelling house, mobile home or house trailer, whether occupied, unoccupied or vacant, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself or of another, shall be guilty of arson in the first degree and upon conviction thereof, shall be punished by imprisonment for not more than 20 years. Should the life of any person be lost in consequence of any such burning, such offender shall be deemed guilty of murder and be punished accordingly.

"§ 162. *Second degree* Any person who willfully and maliciously (1) sets fire to (2) burns (3) causes to be burned or (4) aids, counsels or procures the burning of any building or structure of whatsoever class or character, whether the property of himself or of another, not included or described in section 161, shall be guilty of arson in the second degree, and upon conviction thereof, shall be punished by a fine of not more than $5,000 or by im-

prisonment for not more than 10 years, or by both.

"§ 163. *Third degree* Any person who willfully and maliciously (1) sets fire to (2) burns (3) causes to be burned or (4) aids, counsels or procures the burning of any personal or real property of whatsoever class or character, and the property of another person, shall be guilty of arson in the third degree and upon conviction thereof, shall be punished by a fine of not more than $2,000 or by imprisonment for not more than 3 years, or by both.

"§ 164. *Fourth degree* Any person who willfully and maliciously (1) attempts to set fire to (2) attempts to burn (3) aids, counsels or procures the burning of any of the buildings or property mentioned in sections 161 to 163, or (4) commits any act preliminary thereto, in furtherance thereof shall be guilty of arson in the fourth degree and upon conviction thereof shall be punished by imprisonment for not more than 11 months, or by a fine of not more than $1,000, or by both.

"§ 165. *Liability of wife* Sections 161 to 164 are applicable to a married woman committing any of such offenses without the consent of her husband, although the property set on fire and burned belonged wholly or in part to him."

when the property burned is (1) ". . . the property of another person" and (2) is ". . . any personal or real property of whatsoever class or character, . . . ."

The bite of defendant's position is that since the property specification of Section 163—"any personal or real property of whatsoever class or character"—totally encompasses all property purportedly subjected to the greater penalty severity of Section 161, unconstitutional "vagueness" exists in Section 161. The theory is that "due process" is violated because the combined import of Sections 161 and 163 allows no rational basis by which, in advance of conduct, any person of ordinary intelligence can be adequately informed whether his actions will be subject to the more serious penalty under Section 161 or the less severe punishment under Section 163; and, therefore, the greater punishment provisions must be nullified as contrary to "due process."

The mere statement of this issue reveals that defendant misconceives the "void for vagueness" doctrine.

■ Not only Section 161 but also Section 163, each taken within its own contours, is sufficiently clear in meaning, both facially and as each might have rational application to an expansive central core of conduct, to provide adequate prospective delimitation of the kind of human behavior subjected to State control for criminality —as persons of average intelligence may be expected to understand the English language. State v. Aucoin, Me., 278 A.2d 395 (1971); Knowlton v. State, Me., 257 A.2d 409 (1969); Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). In such context, that the legislature might have created an uncertainty because language used in the section imposing the lesser punishment seems to cover the same conduct described in another statutory section prescribing more serious punishment is insufficient to produce a framework to which the constitutional doctrine of "void for vagueness" may be said to be reasonably applicable.

■■ While lack of clarity and uncertainty are necessary ingredients of unconstitutionality for "vagueness", not every ambiguity, uncertainty or imprecision of language in a statutory pattern *eo ipso* causes the constitutional "void for vagueness" doctrine to become reasonably projected as a genuine issue. When, as here, this Court's discharge of its traditional function to interpret legislative intent will eliminate the uncertainty developed (because Section 163 seems to encompass same property with which Section 161 is concerned), the genuine issue becomes the usual one of statutory construction rather than a question of constitutional dimension under the "void for vagueness" doctrine. Whether the ultimate judicial conclusion is that Section 161 continues to have independent viability or whether Section 163 is held to have produced, by applicable legal principles, a repeal of Section 161 by implication, on either alternative the legislature has provided a person of ordinary intelligence adequate notice of a comprehensible standard by which government will measure his conduct for purposes of criminality and punishment. In such posture the constitutional doctrine of "void for vagueness" is simply inapposite; the issue is nothing other than a problem of statutory interpretation. Cf. Erlenbaugh v. United States, 409 U.S. 239, 93 S.Ct. 477, 34 L. Ed.2d 446 (1972).

The true question here, then, emerges as the second issue raised by defendant— whether an intention must be attributed to the legislature to have superseded, by implication from the enactment of Section 163, the legal effectiveness of Section 161.

In 1967 the Maine legislature substantially rewrote the text of the Maine law of

arson. Among the most important features was the specification of four degrees of arson ranging in decreasing levels of severity.

The legislative penalty scale reveals recognition that since the earliest days of the common law Anglo-American civilization has continuously regarded as of the highest degree of culpability the burning of a dwelling house

" '. . . because it manifested in the perpetrator, a greater recklessness and contempt of human life, than the burning of any other building, and in which no human being was presumed to be.' " State v. Rand and Henry, 132 Me. 246, 248, 169 A. 898, 899 (1934)

By affirming in Section 161 that the burning of a dwelling house, or a structure connected with it, is of the "first degree" of culpability and, hence, the most severely punished, the Maine legislature was plainly and explicitly seeking to continue as current public policy this attitude which had been unimpaired in its continuity for almost a millennium.

The purport of defendant's position is that because there was omitted from Section 163 the few words, "not included or described in section 161 [or 162]", (words very plainly inserted by the legislature in Section 162 dealing with arson in the second degree), the legislature was undertaking to repudiate the long-standing attitude of Anglo-Saxon and American law that the burning of a dwelling house warrants punishment of the highest degree of severity; and that this result must be judicially announced even though the defendant has failed to assign any current public policy

considerations reasonably suggestive of a need for such startling retrogression.

In light of the legislature's scrupulous effort to establish a range of penalty severity in four degrees and its careful use of appropriate words in Section 162 to ensure that the property described as the subject-matter of "first degree" arson is excluded from the kind of property as to which arson is punishable less severely in the "second degree", were this Court to hold that the legislature intended that distinctions as to the "class or character" of the property burned are immaterial to the severity of punishment—except, as defendant's position imports, to make the "third degree" of severity, the maximum,—this Court would be deciding that in undertaking to prescribe a first and second degree of arson, the legislature in practical effect had been indulging in acts of self-defeating absurdity.

Such irrationality is not to be attributed to the legislature if there are reasonable alternatives by which it may be avoided. A reasonable explanation consistent with legislative rationality, rather than irrationality, is here evident. The totality of Sections 161 to 164, inclusive, taken in pari materia, make transparently clear that the seeming overreach of Section 163 to include all property covered by both Sections 161 and 162 was the result of a scribal omission in textual preparation—an inadvertent omission to complete the pattern of word usage already so clearly manifested as commenced in the provisions of Section 162 and by which Section 162 was clearly made to cover only such property as was "not included or described in section 161." The logical completion of this pattern would be that in Section 163 the text was

3. By P.L.1971, Chapter 95, effective September 23, 1971 (after the date of defendant's alleged conduct) Section 163 was amended to describe the property within its coverage by addition of the words "not included or described in section 161 or 162."

intended to read: "not included or described in section 161 or 162."

■ It is the proper function of this Court, in accordance with recognized principles of statutory interpretation, to avoid absurdity and declare as law legislative intention plainly manifested but inadequately expressed in words by providing the language which will the more effectively reveal it.

■ We hold, therefore, that in its application to the present situation the legal effect of Section 163 is to embrace only such property as is "not included or described in section 161 or 162."[3] Hence, Section 163 has not, by implication, deprived Section 161 of legal effectiveness. Section 161 is controllingly operative to establish the alleged conduct of defendant as the crime of arson punishable in the first degree.

■ Defendant's last claim is that he cannot be guilty of arson (in the first degree in violation of Section 161) because the dwelling house he is accused of burning was the property of his wife. The crux of defendant's contention is that when the legislature rewrote the Maine arson law in 1967 its deletion from Sections 161–164, inclusive, of the explicit reference to property of "his wife"—language which had been inserted expressly by an amendment in 1935[4] and retained in the statute until removed in the 1967 reformulation—manifests a return to common law doctrines.

It had been the common law of Maine that the sole owner of a dwelling house in rightful possession of it committed no criminal offense by burning it. State v. Haynes, 66 Me. 307 (1876); State v. Beckwith, 135 Me. 423, 198 A. 739 (1938).

On this foundation the common law had developed the corollary principle that a husband, because he would not be guilty of crime if he were to burn a dwelling house owned and rightfully occupied by himself, is not guilty of arson should he burn a dwelling house owned by his wife and in which he and his wife cohabit. Kopcyznski v. State, 137 Wis. 358, 118 N.W. 863 (1908). The rationale was: (1) arson relates to impairment of the possessory interest rather than the legal title, and (2) by marriage a woman's legal personality is absorbed into that of her husband with the result that the husband's interference (by burning) with his wife's possessory interest in a dwelling house jointly occupied by them becomes an impairment only of the husband's possession and, hence, falls within the common law principle that a man commits no crime if, by burning, he impairs his own possession of a dwelling house. See: Snyder v. People, 26 Mich. 106 (1872).

Regardless of whether this common law doctrine persisted in Maine despite enactment of the Married Woman's Acts (commencing with 1844) and the statutes concerning arson as they were written prior to 1915 (requiring that the property burned be, as at common law, property "of another"),[5] it was abrogated by enactment in 1915 of P.L.1915, Chapter 79 broaden-

---

4. P.L.1935, Chapter 71, Sections 1–4, inclusive.

5. Strict adherence to common law theory could indicate that the statutory changes in the common law reflected by the Married Woman's Acts (commencing with 1844), or the statutory embodiment of arson as formulated prior to 1915, might not have effectively altered common law principles of arson as to husband and wife.

　The Married Woman's Acts had been continuously regarded in Maine—notwithstanding that they explicitly recognized separate and independent interests to exist in married women concerning property owned prior to coverture and brought into the marriage—to be insufficient to es-

ing arson to include a person's burning of a dwelling house "belonging wholly or in part *to himself* or to another." (emphasis supplied) Once it became criminal for a person to burn a dwelling house "belonging wholly or in part to himself . . .", a husband became guilty of arson for burning a dwelling house jointly occupied by himself and his wife precisely because he was impairing a possessory interest "belonging . . . to himself . . .", whether directly or derivatively from his wife because of the merger of their interests caused by marriage. State v. Zemple, 196 Minn. 159, 264 N.W. 587 (1936). See: Daniels v. Commonwealth, 172 Va. 583, 1 S.E.2d 333, 338 (1939).

When, therefore, in 1935, by P.L.1935, Chapter 71, §§ 1 to 4, inclusive, the Maine legislature saw fit to insert within the phrase, "dwelling house . . . belonging wholly or in part to himself or to another", (as it had been retained in the statutes since 1915) the additional language, "his wife",—with the result that the statute, as amended, read:

"dwelling house . . . belonging wholly or in part to himself, *his wife* or to another" (emphasis supplied),

the legislature was acting to reaffirm, from abundance of caution to make assurance doubly sure, the law as already established in Maine twenty years previously (in 1915).

By its choice, therefore, in 1967 to delete the words "his wife" from Sections 161 to 164, inclusive, and to rely solely upon the words, "whether the property of himself or of another", the legislature was in reality adverting to the same instrumentality to continue the abrogation of common law doctrines which had already been utilized effectively in 1915 and concerning which the legislative action taken in 1935, adding explicit reference to the property of "his wife", was fundamentally only surplusage (however helpful to provide an extra measure of emphasis).

The argument of defendant is further deficient because of the grossly inappropriate timing it purports to assign for a legislative retrogression to archaic mystiques of the common law. It was in the decade of the 1960's, especially its latter half, that the time had finally come for the idea that each woman, because she is a human being, should be recognized by the law as endowed with individual personality which, as the law allows to every man, she must have the right freely to develop, express and fulfill at all times by choice

---

tablish a separate and independent legal personality for a married woman, at least in relation to conduct by the husband occurring during coverture. Sacknoff v. Sacknoff, 131 Me. 280, 161 A. 669 (1932) and cases therein cited.

Similarly, prior to 1915 the arson statutes in Maine had continuingly made arson a criminal offense only as to property "of another." See: R.S.1903, Chapter 120, Section 1, and prior revisions. Hence, as State v. Beckwith, supra, had elucidated, Maine had preesrved the essence of the common law doctrine that a burning which interfered with one's own possessory interest in a dwelling house was not a criminal offense. This further implied that, as at common law, since the law's merger of the wife's legal person into that of her husband merged her possessory interests in property during coverture into those of her husband, the common law rule was being continued— insofar as statutory provisions prior to 1915 referred to the property "of another"—that a husband's burning of a dwelling house rightfully and jointly occupied by him with his wife, and although the legal title might be in the wife, could not be arson. The burning was an interference only with the "possession" of the husband (the wife's possessory interests merging into that of the husband) and, hence, the husband's burning was the burning of *his* "property" rather than that "of another." See: Snyder v. People, 26 Mich. 106 (1872); Daniels v. Commonwealth, 172 Va. 583, 1 S.E.2d 333 (1939); Kopcyznski v. State, 137 Wis. 358, 118 N.W. 863 (1908).

rather than under the pressures of societal roles fixed in advance.

If the Maine legislature was not yet ready in 1967 to accept the fullest implications of this idea, the legislature could hardly, with rationality, be thought to have chosen 1967 to launch so massive a repudiation of it as is suggested by the argument of defendant—namely, to resurrect in a context in which it had been laid to rest for at least thirty years a common law doctrine which in 1967 would be regarded as an outlandish anachronism: that marriage transforms a woman in the eyes of the law into a non-person.

In a last effort to support his argument defendant points to the provisions of 17 M.R.S.A. § 165 reading:

"Sections 161 to 164 are applicable to a married woman committing any of such offenses without the consent of her husband, although the property set on fire and burned belonged wholly or in part to him."

Defendant maintains that the retention of this section in the 1967 reformulation—a section which has remained fundamentally intact in the Maine statutes continuously since it first appeared in R.S.1840, Chapter 155, § 7—reveals a legislative concern uniquely and explicitly directed toward preservation of the common law conceptions of the impact of husband and wife relationships upon the criminality, or non-criminality, of the conduct of either the husband or the wife in an arson situation.

To the extent that defendant seeks to derive from the retention of the provisions of Section 165—which in terms is confined to the conduct of "a married woman"—the proposition that *all* facets of the common law concerning husband and wife relative to the crime of arson have been preserved by Sections 161 to 165, inclusive,—and including, specifically, as one such fac-

et the common law principle that a husband is not guilty of arson when he burns a dwelling house in which his wife and he cohabit and to which either of them has a legal title interest in part or in whole—the thrust of defendant's position is unreasonably overbroad and, therefore, unworthy of acceptance. This Court would be attributing to the legislature the perpetration of an inexplicable anomaly were it to conclude that the legislature truly intended to establish, by Section 165 in interrelationship with Sections 161 to 164, the ultimate theoretical import of defendant's position—that a married woman acts criminally when, without her husband's consent, she burns property which ". . . [belongs] wholly or in part to him"; but yet it is not criminal conduct if the husband, without his wife's consent, burns a dwelling house which ". . . [belongs] wholly or in part" to her.

Defendant's argument, predicated on the continuing operativeness of Section 165 is, therefore, unacceptable. It cuts so wide a swath that it produces consequences which, under public policy attitudes prevailing in 1967 (and thereafter), must be looked upon as beyond rational possibility of being within the scope of legislative contemplation.

It remains clear to us that Section 165 is to be interpreted as resting on a legislative premise that Section 161 has definitively settled, by the rationale previously explained, that a husband is guilty of criminal conduct when he burns any of the property therein described regardless of whether it be he or his wife who holds the legal title and notwithstanding that the husband might be in possession either alone or jointly with his wife.[6]

If potential ambiguities, or uncertainties, arise from the continuous legislative retention of the substance of Section 165 (since 1840) concerning the circumstances in

---

6. As the prior discussion has revealed, the non-criminality, at common law, of a husband's burning of property legal title to

which was in whole or part in the wife, was predicated on the husband's being in possession. See: Kopcyznski v. State,

which it is criminal or non-criminal for a married woman to burn property owned wholly or in part by herself or her husband, it is not only unnecessary but would be inappropriate—since it would be an exercise only to develop dictum—that we undertake to resolve such problems in the present context in which the issue is the criminality of the conduct of a married man charged with burning a dwelling house owned by his wife. The answers to issues under Section 165 should await a specific case in which arson is charged against a married woman for burning property belonging wholly or in part either to herself or to her husband.

It is sufficient here that we decide, as we do, that it is criminal under Section 161 for a husband to burn a dwelling house belonging wholly or in part to his wife or himself, including that situation in which the husband is in rightful possession.

The entry is:

Appeal denied.

POMEROY, J., did not sit.

*supra* (at p. 382 hereof). In the instant case nothing explicit has been said concerning the husband's possessory relationship to the dwelling house to support the purported invocation of common law protections for the husband. We have nevertheless elected to decide the case by assuming the husband to have been in possession, thereby to afford the posture most favorable to defendant's contentions.