STATE of Maine

v.

Melvin B. LAGASSE, Jr.

Supreme Judicial Court of Maine.

Jan. 24, 1980.

Charles K. Leadbetter (orally), John S. Gleason, Asst. Attys. Gen., Augusta, for plaintiff.

Isaacson, Isaacson & Hark by Robert S. Hark (orally), Gaston Dumais, Lewiston, for defendant.

Before WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

By indictment returned on January 9, 1979, the defendant, Melvin B. Lagasse, Jr., was charged with murder in violation of 17–A M.R.S.A. § 201(1)(A) and (B). Following a jury trial in the Superior Court, Androscoggin County, the defendant was found guilty of the lesser included offense of manslaughter. 17–A M.R.S.A. § 203. On appeal from this conviction the defendant alleges numerous errors. We affirm the judgment of conviction of manslaughter.

About 8:30 on the evening of December 29, 1978, the defendant and his girl friend, Jane, were engaged in a heated argument on the sidewalk next to a theater on Pine Street in Lewiston. The decedent, Albert Pepin, and a female companion were hitchhiking on the other side of the street when they observed the defendant holding Jane against a parked car and slapping her across the face. The decedent shouted to the defendant to leave the young woman alone; the defendant told the decedent to mind his own business. The decedent ran across the street and struck the defendant in the face. During the fight that ensued, the defendant claims he saw the decedent reach into his pocket and, believing the decedent was pulling out a jackknife, the defendant withdrew a jackknife from his own pocket. He opened this knife, placing it in his left hand with the blade toward his palm, and then grappled with the decedent.

In the course of this struggle, the defendant had the decedent in a headlock with his right arm and punched the decedent's chest with his left hand. Discovering that the jackknife had closed on and cut his fingers, the defendant released the decedent and shook the knife free from his injured left hand. The decedent fell to the ground mortally injured by a single stab wound in his chest. Only one knife was found at the scene of the altercation.

I

■ Both by a pre-trial motion to dismiss and by a post-verdict motion in arrest of judgment, the defendant attacked the sufficiency of the indictment. 17–A M.R.S.A. § 201 requires that the conduct of the accused cause "the death of another human being." The defendant argues that the indictment charging him with a violation of that statute was fatally defective because it failed to allege an essential element of the offense: Although identifying the decedent as Albert F. Pepin, the indictment failed to charge that Pepin was *another human being.*

We have previously rejected this identical argument in *State v. Hachey*, Me., 278 A.2d 397, 398 (1971). Although that case arose prior to the enactment of our new Criminal Code, the murder statute then in effect also required that the killing be of "a human being." [1] Therefore, the principles enunciated in *Hachey* are equally applicable to a charge of homicide under our new code. The defendant's contention is without merit.

II

■ The indictment charged the defendant alternatively with intentional or knowing murder, 17–A M.R.S.A. § 201(1)(A), and with depraved indifference murder, 17–A M.R.S.A. § 201(1)(B). Prior to trial, the defendant moved to strike as surplusage the alternative charge of depraved indifference murder or to compel an election on the ground that the evidence adduced in a pre-

---

1. 17 M.R.S.A. § 2651 (repealed, P.L.1975, ch. 499, § 15).

trial hearing on bail and on motions to suppress evidence could not support the alternative charge. This motion was denied. It is the defendant's contention that the Superior Court Justice erred and that the reading of the alternative charge to the jury at the commencement of the trial was highly prejudicial.

The defendant's pre-trial motion was, in effect, a motion to dismiss a portion of the indictment based on the insufficiency of evidence produced at a pre-trial hearing. A pre-trial motion addressed to the sufficiency of the evidence to support the indictment is unknown to our criminal procedure.[2] In any event, no prejudice resulted to the defendant from the reading of the entire indictment to the jury at the commencement of the trial since at the conclusion of all of the evidence the presiding Justice properly declined to instruct the jury on the theory of depraved indifference murder, finding that the evidence was insufficient to support that charge.

▮▮▮ Despite our conclusion that in this case the defendant was not prejudiced by the inclusion of the alternative charge of depraved indifference murder, we are constrained to utter a word of caution to prosecutors. We recognize that at the time a case is presented to a grand jury the prosecutor may not be in full possession of all of the evidence relating to the manner in which the homicide was committed and that, therefore, in an excess of caution the prosecuting attorney may seek from the grand jury an indictment charging murder in the alternative form of depraved indifference as well as intentional and knowing murder. Nevertheless, by the time the case is ready to start trial, the prosecutor should be fully informed as to all of the circumstances surrounding the particular homicide and should carefully evaluate his evidence to determine whether in fairness to the defendant the charge of depraved indifference murder ought to be dismissed before the trial commences. The statute recogniz-

ing the crime of depraved indifference murder is not a catchall enacted to make it easier to secure convictions. The purpose of the statute is to deal with those few instances in which, although the defendant did not act intentionally or knowingly, his conduct, objectively viewed, created such a high tendency to produce death that the law attributes to him the highest degree of blameworthiness. *See State v. Woodbury*, Me., 403 A.2d 1166, 1173 (1979). In fulfilling their ethical responsibility,[3] prosecutors must recognize that depraved indifference murder constitutes a narrow and limited exception to the fundamental principle of our Criminal Code that a person may not be proven guilty of a crime without proof that he possessed one of the enumerated culpable states of mind. *See* 17–A M.R.S.A. § 11(1).

### III

At the defendant's trial, the State offered into evidence a jackknife marked State's exhibit no. 1. Over the defendant's objection of a lack of foundation and undue prejudice, the knife was admitted into evidence. On appeal the defendant contends that the presiding Justice abused his discretion because the knife was not properly authenticated and because its prejudicial effect outweighed its probative value. These two distinct contentions must be examined separately.

▮▮▮ M.R.Evid. 901(a), which governs authentication, provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The following evidence was received to identify State's exhibit no. 1: A witness testified that shortly after the altercation between the defendant and the decedent he found the jackknife identified as State's exhibit no. 1 as he was leaving the theater near the scene of the fight. This witness testified that he retained the

---

2. *But see State v. Denis*, Me., 304 A.2d 377, 378 (1973), where a motion to dismiss was heard on a stipulated set of facts.

3. Me.Bar R. 3.7(i)(1).

knife in his custody until he turned it over to the police five days later. A stipulation was entered into between counsel that there was a proper chain of custody of the knife while it was in the possession of the police. Thus, there was sufficient evidence to support a finding that State's exhibit no. 1 was the knife found at the scene of the crime. *See State v. Beaudoin*, Me., 386 A.2d 731, 733 (1978).

Turning to the other ground of the defendant's objection, the defendant does not contend that the knife was not relevant but rather that although relevant its prejudicial effect outweighed its probative value and therefore it should have been excluded under M.R.Evid. 403. The probative value of State's exhibit no. 1 becomes apparent when one examines the record. There was testimony that the defendant was involved in an altercation with the decedent at the time Pepin received the fatal stab wound. Medical testimony was received that Pepin's death was caused by a single stab wound and that the width of this stab wound was consistent with the blade dimensions of State's exhibit no. 1. There were admissions by the defendant that he had pulled a knife from his pocket and had jabbed the decedent, cutting his own hand in the process. There was testimony that the knife had been found at the scene of the crime shortly after the incident and had been turned over to the police five days later. Police officers testified that although they had conducted a search of the scene the night of the incident and the following morning no other weapon was found. Finally, there was expert testimony that bloodstains were present on the knife but that the sample was insufficient to permit blood-typing. This evidence was sufficient to permit the jury to infer that State's exhibit no. 1 was the weapon that caused the decedent's death and that it was also the weapon which the defendant admittedly had taken from his pocket and held in his hand when he had jabbed the decedent. When we examine the alleged prejudicial effect of State's exhibit no. 1, we find the defendant's argument is predicated upon the proposition that real evidence, *i. e.*, physical evidence, has a greater potential for prejudice than does testimonial evidence. Although as a general proposition real evidence may present a greater potential for prejudice than testimonial evidence, particularly when the real evidence is a gruesome photograph or a part of a human body, we are at a loss to understand why allowing State's exhibit no. 1 into evidence is any more prejudicial than allowing the testimony concerning it to be received. The only prejudice is that the physical object corroborates the testimonial evidence and therefore makes it more believable. As we have noted so many times, the prejudice to which Rule 403 refers is "unfair prejudice" and not the prejudice inherent in having evidence received that is adverse to one's position. *E. g., State v. Hurd*, Me., 360 A.2d 525, 527 n.5 (1976).

In any event, the balancing of probative value against prejudicial effect rests within the sound judicial discretion of the presiding Justice. *See State v. Doughty*, Me., 399 A.2d 1319, 1323 (1979); *State v. Dodge*, Me., 397 A.2d 588, 592 (1979). We find no abuse of discretion by the presiding Justice in admitting State's exhibit no. 1.

## IV

Upon a motion *in limine* made by the State at the beginning of the defendant's case, the presiding Justice excluded testimony from the decedent's ex-wife that Pepin, a heavy drinker, had assaulted her on the average of three times a week over a ten-year period. The defendant contends this evidence was admissible either under M.R. Evid. 404, as character evidence, or under M.R.Evid. 406, as evidence of habit. The purpose of offering this evidence was to bolster the defendant's claim of self-defense on the theory that this evidence would tend to show the decedent was the aggressor in the fatal fight.

Habit or routine practice is admissible under M.R.Evid. 406(a). The rationale behind the rule is explained in the Advisers' Note: "[H]abit describes one's regular response to a repeated specific situ-

ation so that doing the habitual act becomes semi-automatic. It is the notion of the invariable regularity that gives habit evidence its probative force." Advisers' Note, M.R.Evid. 406. *See generally* R. Field & P. Murray, Maine Evidence § 406.1 (1976). The tendency of a person to engage in violent acts while under the influence of intoxicating liquor does not establish the "regular response to a repeated specific situation" necessary to constitute habit under M.R.Evid. 406. *Id.* Rather, such evidence is character evidence—"a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness." Field & Murray, *supra.* Thus, the evidence was not admissible under the provisions of Rule 406(a).

Recognizing that under the express terms of M.R.Evid. 404(a) and this Court's decision in *State v. Mitchell*, Me., 390 A.2d 495, 501 (1978), the offered testimony was not admissible, the defendant urges that we should hold Rule 404 unconstitutional to the extent that it excludes such evidence. The defendant points out that most jurisdictions do allow the defendant in a homicide prosecution to introduce evidence of the decedent's reputation for violence to corroborate his claim that the decedent was the aggressor. *See generally* C. McCormick, Handbook of the Law of Evidence § 193 (2d ed. E. Cleary 1972); 1 J. Wigmore, Evidence § 63 (3d ed. 1940).

■ Questions concerning the admissibility of evidence in state courts are largely matters of state law; federal due process allows the states substantial latitude in formulating their own rules of evidence. *Manning v. Rose*, 507 F.2d 889, 892 (6th Cir. 1974). The Advisers' Note to Rule 404 recognizes that the comparable federal rule would allow evidence of the victim's character but states

> it is omitted from this rule because it has slight probative value and is likely to be highly prejudicial, so as to divert atten-

tion from what actually occurred. Advisers' Note, M.R.Evid. 404.

This rationally devised rule of evidence, designed to avoid diverting the jury's attention from the real issues, is not fundamentally unfair and, therefore, does not constitute a violation of due process. *See Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976).

## V

■ The defendant contends that the evidence adduced at trial was insufficient to support the conviction of the offense of manslaughter. In reviewing the sufficiency of the evidence, we apply the standard that the conviction must be set aside if "no rational trier of fact could [find] proof of guilt beyond a reasonable doubt."[4] *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560, 576–77 (1979).

■ Relying on the claim of self-defense, 17–A M.R.S.A. § 108(2)(A)(1), the defendant asserts that once he produced sufficient evidence to generate the issue of self-defense the State had the burden of negating this defense beyond a reasonable doubt. That is unquestionably the law. *See* 17–A M.R.S.A. § 5(2)(B). The flaw in the defendant's reasoning is that merely because there is evidence sufficient to generate an issue does not mean the jury is compelled to believe that evidence. In view of the absence of any evidence other than the defendant's assertion that the victim had or used a knife, the jury could have rationally concluded beyond a reasonable doubt that the defendant did not subjectively believe either that it was necessary to use deadly force or that the victim was about to use deadly force against him. The jury might also have concluded that, although the defendant subjectively entertained such beliefs, these beliefs were unreasonable. *See* 17–A M.R.S.A. § 108(2)(A)(1). Thus, a rational trier of fact could be convinced beyond a reasonable

---

4. This standard is the same as the standard we have traditionally used. *See, e. g., State v. Doughty, supra*, 399 A.2d at 1326.

doubt that the defendant had not acted in justifiable self-defense.

The defendant also asserts that the State failed to establish causation beyond a reasonable doubt because the pathologist merely testified that the jackknife or any number of smaller sharp instruments could have inflicted the wound and that the wound might have been accidentally inflicted. Again, other than the statement of the defendant there was no evidence that any weapon was present other than the knife that the defendant had and used. There was evidence from which the jury could have found that the defendant withdrew this jackknife from his pocket, opened it, and, while grappling with the victim, punched him in the chest with the clenched left hand containing the knife. The decedent fell to the ground and subsequently died from a single stab wound in the chest consistent with the blade dimensions of the jackknife. Thus, the jury could have rationally concluded that the victim's death would not have occurred but for the conduct of the defendant. 17–A M.R.S.A. § 56.

The jury found the defendant guilty of manslaughter.[5] There was more than sufficient evidence from which the jury could have rationally concluded that the defendant's conduct was reckless, see 17–A M.R.S.A. § 10(3), or criminally negligent, see id., § 10(4). Moreover, the jury could have rationally concluded that, although the defendant subjectively believed it was necessary to use deadly force and subjectively believed the victim was about to use deadly force against him, either or both of those beliefs were unreasonable and that in formulating those subjective beliefs the defendant acted recklessly or with criminal negligence. See id., § 101(1). We conclude that sufficient evidence existed to permit a rational trier of the fact to conclude beyond a reasonable doubt that the defendant was guilty of the crime of manslaughter.

## VI

■ Debra Wright had been called as a witness by the State. She had come upon the scene while the two men were fighting. During her direct testimony, she was asked to describe the physical appearance of the young woman who, along with the defendant, had walked past the witness as they left the crime scene. Her response and subsequent testimony were as follows:

WITNESS: Yes, it looked like she had been slapped at least in the face.

DEFENSE COUNSEL: Objection, Your Honor. We are going beyond appearance by raising speculation as to what the source of any bruises were. The witness isn't competent.

COURT: All right, Miss Wright, you may describe how the person appeared to you, but don't talk in terms of what—

WITNESS: I don't know how to describe—when somebody has been slapped and their skin is swollen and red, it looked like she had been slapped.

DEFENSE COUNSEL: I would ask that be stricken, Your Honor.

COURT: That is denied.

The defendant contends the presiding Justice committed reversible error in not striking this testimony. He argues that the testimony concerning the cause of the girl's physical appearance related to a disputed factual issue, crucial to the self-defense claim, of which the witness had no personal knowledge.

This testimony was properly admissible as opinion testimony by a lay witness pursuant to M.R.Evid. 701. The statement of the witness as to the source of the bruises she observed was rationally based on her perception because she saw the face of the young woman from a few feet away and was helpful to a clear understanding of her testimony. The bruises she observed are consistent in common knowledge with those which would be present on the face of one who had been "slapped." Her testimony was therefore a "shorthand rendering of

5. 17–A M.R.S.A. § 203(1)(A) provides:

1. A person is guilty of manslaughter if he:

A. Recklessly, or with criminal negligence, causes the death of another human being

. . . .

the facts." *See, e. g., State v. Pottle*, Me., 384 A.2d 55, 56 (1978); *State v. Buzynski*, Me., 330 A.2d 422, 426–27 (1974). *See generally* Field & Murray, *supra*, § 701.1.

### VII

Although not raised in his brief, at oral argument the defendant asserted that the presiding Justice committed error in failing to instruct the jury on the offense of assault, 17–A M.R.S.A. § 207, which the defendant now alleges is a lesser included offense within the charge of murder. The defendant did not request an instruction on the offense of assault from the presiding Justice nor did the defendant object at the conclusion of the court's charge to the failure of the presiding Justice to instruct on the offense of assault. In view of the procedural status of this matter and the evidence produced, it is unnecessary for us to rule on the question whether assault is a lesser included offense within the charge of murder.

17–A M.R.S.A. § 13(2) (Supp.1978), which was applicable to this case,[6] defined the duty of the presiding Justice to instruct the jury upon so-called lesser offenses:

> The court is not required to instruct the jury concerning a lesser offense, unless on the basis of the evidence there is a rational basis for the jury finding the defendant guilty of such lesser offense. *Id.*

There was no rational basis in the evidence for the giving of an instruction on the crime of assault. The only rational interpretation of the evidence is that the deceased died of a stab wound inflicted by the defendant. This fact, coupled with the jury's finding of lack of justification and a culpable state of mind, left the jury with no rational basis for finding the defendant guilty of any offense other than unlawful homicide.

The entry is:

**6.** This provision was repealed and replaced by P.L.1979, ch. 512, § 20, effective September 14,

Appeal denied.

Judgment of conviction affirmed.

McKUSICK, C. J., and POMEROY and ARCHIBALD, JJ., did not sit.