STATE of Maine

v.

Cynthia HICKEY.

Supreme Judicial Court of Maine.

Argued March 9, 1983.

Reargued March 14, 1983.

Decided April 26, 1983.

---

Charles K. Leadbetter (orally), Frederick C. Moore, Asst. Attys. Gen., Augusta, for plaintiff.

Judith R. Potter, University of Maine School of Law, Portland (orally), for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

A Superior Court (Cumberland County) justice granted defendant's motion to compel the State to elect between proceeding against the defendant on a charge of intentional murder, 17–A M.R.S.A. § 201(1)(A) (1983) or depraved indifference murder, 17–A M.R.S.A. § 201(1)(B) (1983). The State appeals that order pursuant to 15 M.R.S.A. § 2115–A(1) (Supp.1982–1983) and M.R.Crim.P. 37B. We sustain the appeal.

In November, 1981, the grand jury indicted the defendant for the offense of murder, alleging in the alternative that the defendant's death-producing conduct fell within 17–A M.R.S.A. § 201(1)(A) (intentional murder) or within 17–A M.R.S.A. § 201(1)(B) (depraved indifference murder). The indictment read:

> On or about the 9th day of October, 1981, in the County of Cumberland, State of Maine, Cynthia Hickey did intentionally or knowingly cause the death of Charlene Hickey, or did engage in conduct which manifested a depraved indifference to the value of human life and which in fact caused the death of Charlene Hickey.

The defendant pleaded not guilty and received court-appointed counsel.

Based on the record before the justice at the hearing on the motion to compel an election and at the later motion for reconsideration, the cause of the baby's death was shown to be subdural hematoma and external trauma. In his affidavit in support of the complaint for murder, Det. Conley stated that the defendant had told him that she "had on several incidents in the past hit the child." Conley stated that the defendant's mother told him that she had observed "numerous bruises" on the body of the baby in July, 1981, and had reported that observation to the Maine Department of Human Services. Conley also spoke to the defendant's sister, who had discussed the baby's death with the defendant. The defendant had admitted to her sister, "well, I hit the baby too hard."

Initially, the defendant told the police that she had been home with her baby on the day of the death. The defendant stated that the baby had fallen off the sofa and had injured her head. The medical examiner who performed the autopsy on the baby stated that the baby's injuries were not consistent with the defendant's initial story. The defendant subsequently gave a second statement to the police in which she admitted that her first statement had been untrue. According to the second statement, she had not been at home when the baby died. She had left the baby home alone with her boyfriend, Anthony Bell. When she returned home and found the baby dead, she aided Bell in leaving the jurisdiction and gave the police her initial, false statement to cover up for Bell.

Based on the defendant's second statement, the State filed a motion to continue. At the August 13, 1982 hearing on the motion, the State represented to the court that since the initial indictment of the defendant, the State had accumulated new evidence which made it "in the interest of justice" for the State to indict Bell and add to the charges against the defendant a count of hindering apprehension. The prosecutor represented that "[w]e're seeking a further indictment" against the defendant and even discussed ordering a special grand jury the next week, rather than waiting for the regular September grand jury.

The defendant strongly opposed the continuance because the defendant had been in jail for ten months and because the evidence on which the motion was based had been available to the State since March, 1982. The defendant argued, essentially, that the State had never examined the merits of its case.

The justice granted the State's motion to continue. The court reasoned that the

State should not be precluded, by the provisions of 17–A M.R.S.A. § 14,[1] from going forward with charges "which it says *it will in good faith* present to a grand jury promptly...." (Emphasis added.)

The State did not, in fact, seek an indictment against Bell nor did the State reindict the defendant, contrary to what the justice called an "absolute representation" that the State would do so. At a later hearing, on October 21, 1982, the State explained that after the motion to continue was granted, the State's attorneys "discussed the case in some detail" and concluded that they did not have sufficient evidence to seek the additional indictments. The justice replied that the State had never stated that it needed time to "pause and consider." Rather, the State represented that it intended to indict. The justice stated that he had been, in effect, "taken in" by accepting in good faith the State's representations and that he would be, unfortunately, reluctant to accept similar representations in the future. The justice concluded with the observation that the State's handling of the case involved "a considerable amount of floundering...."

On August 10, 1982, the defendant filed a motion for a bill of particulars, pursuant to M.R.Crim.P. 16(c)(2). In her motion, the defendant stated that based on the probable cause affidavit, it had appeared that the State "was accusing Defendant of personally beating her baby to death." It now appeared, however, that the State was proceeding instead on the "theory" that the defendant should not have left her baby alone with Bell. The defense counsel argued that

> [a]bsent a Bill of Particulars, further discovery would be ineffectual to protect the rights of defendant because defendant, although being assured by the State

that she has been furnished all she has a right to under Rule 16, heretofore had never received any information that the State was changing its theory of the case from that which was alleged in District Court.

Defendant is unable to adequately prepare her defense in this case without knowing which conduct of Defendant the State is alleging manifests a depraved indifference to human life.

At the hearing on the motion for a bill of particulars, defense counsel emphasized that she was not requesting the State's theory of the case. Rather, she stated:

> We are not asking [the prosecutor] to tell us the theory of the case. Simply asking that he tell us about what conduct of the Defendant they are relying on to prove that she violated 17(a) MRSA 201(b) whether they are relying on the fact she actually beat her daughter to death on that course of conduct or whether or not they are relying on the course of conduct that she left her daughter alone with somebody else who killed her daughter.

The prosecutor maintained that the defendant was asking for the State's theory of the case and that he refused to be "pinned down." He represented only that "we have evidence that a jury could find that she— the defendant either is guilty by act of commission or act of omission."

The justice granted the defendant's motion for a bill of particulars on October 1, 1982. The State subsequently filed a bill, which provided:

> Cynthia Hickey did, by a method unknown to the State, inflict one or more of the injuries which caused the death of Charlene Hickey as described in the Report of Investigation by Medical Examin-

1. 17–A M.R.S.A. § 14 provides:

   A defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses were known to the appropriate prosecuting officer at the time of the commencement of the first trial

   and were within the jurisdiction of the same court and within the same venue, unless the court, on application of the prosecuting attorney or of the defendant or on its own motion, orders any such charge to be tried separately if it is satisfied that justice so requires.

er Ronald Roy dated October 9, 1981; and/or was an accomplice to the infliction of such injury or injuries by another person; and/or failed to protect Charlene Hickey from the infliction of such injuries by such other person.

At a subsequent hearing, the justice who had granted the motion noted that "little seemed to have been accomplished by the filing of the Bill of Particulars." The justice had, however, intended that the election between section 201(1)(A) and section 201(1)(B) murder, which he had also ordered the State to make (discussed below) would be made before the bill of particulars was filed. The justice suggested that when and if the election question was determined, the parties and the court might reexamine the bill of particulars. The defendant stated that if the State did not file an adequate bill of particulars within the prescribed time, she would move to dismiss the indictment.

As noted, the defendant had filed, on August 12, 1982, a motion to compel the State to elect a charge against the defendant of violation of either intentional murder, section 201(1)(A), or depraved indifference murder, section 201(1)(B). The motion stated that the election was required because the defendant has a constitutional right to know the nature and cause of the accusation against her and because the Law Court has stated that the prosecutor should so elect in *State v. Lagasse,* 410 A.2d 537 (Me.1980).

At the hearing on the motion to compel an election, the defendant argued that there had been a great deal of misinformation in the case, which had made the preparation of a defense particularly difficult. In addition, the defendant noted that the prosecutor had had the case for almost a year and he should, at this point, "look at" the State's case and determine whether to proceed under section 201(1)(A) or (B).

The State represented to the court that it had in fact considered its evidence in the case and that, in its judgment, the State had sufficient evidence to support the charge of depraved indifference murder. The State argued that considering the defendant's own contradictory statements, the jury should be allowed to consider the alternative bases for conviction that could be inferred from those contradictory statements.

The justice granted the motion on October 1, 1982. His order provided:

The indictment in this case alleges that the defendant "did intentionally or knowingly cause the death of Charlene Hickey, or did engage in conduct which manifested a depraved indifference to the value of human life and which in fact caused the death of Charlene Hickey."

The defendant seeks an order requiring the State to elect to proceed on one or the other of the theories alleged.

This court reads *State v. Lagasse,* Me., 410 A.2d 537 (1980) as requiring such an election in this case.

The entry is:

Motion GRANTED. State to file notice of election on or before October 18, 1982.

On October 18, 1982, the State filed a motion for reconsideration of the order granting the motion to compel. The prosecutor filed an affidavit in support of that motion. In the affidavit he reiterated that there are two contradictory theories on which a jury could find the defendant criminally liable, based on her contradictory statements. He stated that the prosecution would be substantially impaired if the election was required. He further stated in the affidavit:

The State has provided the defense in this case with full discovery of all the facts known to the State. In my professional judgment, the defense would not be surprised by the presentation of any of those facts at trial, under any of the potential theories of criminal liability which would apply...

I have carefully evaluated all available evidence in this case in light of the Law Court's words of caution to prosecutors in *State v. Lagasse,* Me. 410 A.2d 537, 540

(1980) as to pursuing at trial the alternative charge of "depraved indifference" murder (17–A M.R.S.A. § 201(1)(B)) and I am satisfied that it is fair to place this alternative before a factfinder.

The justice denied the motion for reconsideration on October 21, 1982. The State filed this appeal that day.

## I. *Propriety of the Section 2115–A Appeal*

Title 15 M.R.S.A. § 2115–A (Supp.1982–1983) provides that an appeal may be taken by the State within twenty days of the entry of an order, with written approval of the Attorney General, from any pretrial court order which, "either under the particular circumstances of the case or generally for the type of order in question, has a reasonable likelihood of causing either serious impairment to or termination of the prosecution." This Court has recently detailed the requirements for a pretrial appeal by the State under section 2115–A. In *State v. Drown*, 447 A.2d 466, 471–72 (Me. 1982), we construed section 2115–A with the following two principles of appellate review firmly in mind: (1) the appealing party must have suffered a legal detriment as a result of the lower court's order and (2) the strong public policy against piecemeal appellate review. We concluded that in each case involving a section 2115–A appeal, the Attorney General and this Court must conclude that, under the circumstances of the case, the lower court's order has "produced a significant setback to the State's attempt to bring the accused to justice." 447 A.2d at 470–71.

■ We conclude that the justice's order compelling the State to elect between section 201(1)(A) and section 201(1)(B) murder satisfies the *Drown* standard for a proper section 2115–A appeal. Pursuant to 17–A M.R.S.A. § 14,[2] the State is required to prosecute simultaneously all offenses "based on the same conduct or arising from the same criminal episode, if such offenses were known to the appropriate prosecuting officer at the time of the commencement of the first trial ... unless the court ... orders any such charge to be tried separately if it is satisfied that justice so requires." We are certain that the justice's order compelling an election was not intended as an order for separate trials for the same offense on differing theories of law. Rather, the justice ordered that in this case, *State v. Lagasse* required that the State "elect to proceed on one or the other of the theories alleged." In essence, the State was ordered to determine, at its subsequent peril, on which theory a jury might base a conviction. That theory may be determined wholly by the defendant's testimony at trial; the State cannot predict or control that testimony or whether, in fact, she will testify. Further, although the State had represented both orally and in affidavit that it had sufficient evidence to proceed on both theories, the order to elect effectively requires the State to abandon forever a viable and, perhaps, in the event of trial, a successful theory of prosecution. An acquittal of the defendant on whichever theory the State elected would not allow resurrection of the discarded theory, which might have resulted in conviction.

■ As discussed below, *State v. Lagasse* and 17–A M.R.S.A. § 14 require the State to make a good faith evaluation of its evidence to determine exactly which theories of criminal responsibility the State can properly pursue at trial. The State is not, however, then required to predict which theory will, ultimately, be the basis for conviction and to choose accordingly. We think that requiring such a prediction from the State in this case clearly affects adversely the State's attempt to bring the defendant to justice. *Drown*, 447 A.2d at 471. Because "section 2115–A serves a beneficent purpose in permitting Law Court review of preliminary questions of law in situations where a criminal prosecution is threatened by a lower court ruling prior to trial," *Drown*, 447 A.2d at 472, we conclude that the section 2115–A appeal is proper.

2. *See supra* note 1.

## II. *Election*

In her brief, the defendant argues that a justice may, in his discretion, compel an election when (1) the election is necessary for the promotion of justice; (2) the defendant may be embarrassed, confounded, or prejudiced in his defense; (3) the election will promote an orderly and efficient trial and will avoid the risk that the pleadings will adversely affect the jury by alleging several crimes; (4) the charge of depraved indifference murder is employed as a "catch-all" to secure conviction; and (5) the court perceives that the prosecutor has not carefully evaluated his case before trial to determine whether the depraved indifference charge is viable. The defendant contends that these conditions are satisfied in this case. We cannot agree.

### A. Prejudice

■ With regard to the defendant's first three conditions, we note ample Maine authority stating that the prosecutor may be required to elect between two separate and distinct charges in an indictment in order to avoid prejudice to the defendant. *Lagasse,* 410 A.2d at 540 (prosecutor must evaluate case before trial to determine whether depraved indifference charge should be dismissed); *State v. London,* 156 Me. 123, 137–38, 162 A.2d 150, 158 (1960) (held that misdemeanor count and felony count may be joined in one indictment but court may require election if necessary for promotion of justice); *State v. Derry,* 118 Me. 431, 434, 108 A. 568, 569 (1920) (prosecutor may be required to elect between different counts but not because of error in indictment); *State v. Hood,* 51 Me. 363, 364 (1864) (court may compel election between counts if counts are too numerous); *State v. Nelson,* 29 Me. 329, 334 (1849) (court may compel election if counts so numerous as to embarrass defense); *State v. Flye,* 26 Me. 312, 316 (1846) (court may require election but it is "usual to charge a felony in different ways in several counts, with a view to meet the evidence, as it may turn out on the trial...."). To warrant an election, however, the potential prejudice to the defendant or adverse effect on the jury must rise above that usually inherent in the circumstances of a substantial criminal prosecution.[3]

■ There is also Maine authority for the principle that if two or more offenses of the same nature are charged in good faith in different counts of the same indictment for the purpose of meeting a single charge,[4] the "Court will not ever compel the prosecutor to elect." *Flye,* 26 Me. at 316. In *State v. Hood,* a two-count indictment charged the defendant with breaking and entering and stealing. One count alleged that the offense was committed on the 19th of September, in the nighttime; the second count alleged that the offense was committed on the 20th of September, with no allegation that the offense occurred in the nighttime. The Court refused to compel an election and stated:

> Offenses of the same nature, whether the same or different in degree, may be charged in one indictment, in appropriate counts. This has been too often held by the Courts in our own and other States to admit of question or to require the citation of authorities. It is in such cases, where distinct offences are charged, that the Court may, in its discretion, if the counts are so numerous as to embarrass the defence, compel the prosecutor to elect on which charge he will proceed.

---

3. For example, the prosecutor may be required to elect among numerous counts to avoid the risk that "prolix pleading may have some psychological effect upon a jury by suggesting to it that defendant has committed not one but several crimes." *United States v. Ketchum,* 320 F.2d 3, 8 (2d Cir.), *cert. denied,* 375 U.S. 905, 84 S.Ct. 194, 11 L.Ed.2d 145 (1963) (quoting *United States v. Mamber,* 127 F.Supp. 925, 927 (D.Mass.1955)).

4. We note that the defendant's indictment charges both § 201(1)(A) and (B) forms of murder in one count. Although the better practice may be to charge these alternative forms in separate counts, the defendant has not objected to that particular aspect of the indictment. *State v. Joy,* 452 A.2d 408, 411 n. 4 (Me.1982); *State v. Leeman,* 291 A.2d 709, 712 (Me.1972); M.R.Crim.P. 8(a).

But the refusal to compel such election, being a matter of discretion, would not be the subject of exceptions. And where, as is apparent in the present case, the same charge is made in different forms, in good faith, for the purpose of meeting the evidence or the conclusions which the jury might draw therefrom, such election will never be compelled. Whether the jury would come to the conclusion, from the testimony, that this offence was perpetrated in the night time of the 19th of September, or, after daylight, on the morning of the 20th, might be doubtful, and there was no impropriety in charging it both ways.

51 Me. at 364.

With this authority in mind, we consider the defendant's argument that her defense will be prejudiced unless she knows which course of conduct by the defendant the State alleges constitutes murder. At the hearing on the defendant's motion to compel an election, defense counsel stated:

We do not know what essential facts upon which the indictment is based. Is the state alleging that the defendant beat the baby to death? Is the state alleging the defendant was present at a beating and didn't stop it? Is the state alleging that she somehow otherwise participated in the beating by someone else? Is the state going to try to prove that the defendant perhaps was guilty of manslaughter and criminal negligence because she left the baby in a dangerous situation and she shouldn't have done that, or does that amount to depraved indifference, or did she do something else?

It is important to note that at oral argument, the State represented that it had no intention of pursuing any "entrustment"

theory against the defendant. Consequently, the range of offenses of which the defendant could be convicted has narrowed to intentional murder, depraved indifference murder, the lesser included offense of manslaughter, or some type of accomplice liability.[5] The defendant knows these potential bases for a conviction.

The defendant also has the benefit of an indictment that alleges the essential elements of the crimes charged. *State v. Coleman,* 452 A.2d 397, 399 (Me.1982); *State v. Hebert,* 448 A.2d 322, 325 (Me.1982); M.R. Crim.P. 7(c). The defendant's indictment is identical, except for names, dates, and county, to an indictment for intentional and depraved indifference murder expressly found sufficient by this Court. *State v. Crocker,* 435 A.2d 58, 68 (Me.1981). The defendant's indictment is also as detailed as the indictments in *State v. Flick,* 425 A.2d 167, 168 (Me.1981); *State v. Kimball,* 424 A.2d 684, 685 n. 1 (Me.1981). In addition, the defendant has the benefit of the bill of particulars, which details additional bases for the defendant's conviction.

The defendant also has, despite her assertion to the contrary, knowledge of the "essential facts" on which the indictment is based. In his affidavit, the prosecutor stated that the State has provided the defense full discovery of all the facts known to the State. The defendant does not contend that the State has failed in its discovery duties.[6]

■ What the defendant does not have in this case is knowledge of which legal theory the State will pursue at trial. As defense counsel argued at one hearing, "[t]here are at least—not at least two but at least five different theories under which the State

---

**5.** Contrary to the assertions in the prosecutor's affidavit, the State conceded at the later hearing on the motion for reconsideration of the order to elect that the election would not affect accomplice liability. *State v. Goodall,* 407 A.2d 268, 277 (Me.1979).

**6.** At the hearing on the motion to compel, the defense counsel stated:

We, Your Honor, as the state has represented to the Court countless times, have received all they have. Nothing in that material tells us what acts the state is relying on. We don't know. And therefore discovery is not an adequate remedy for us.

could convict a Defendant if they're not forced to elect." The defendant is not entitled to knowledge of the State's theory by indictment or through discovery. *State v. Larrabee,* 377 A.2d 463, 465–66 (Me.1977) (defendant had all necessary facts on which case was to be tried; denial of motion for bill of particulars proper); *State v. Goldman,* 281 A.2d 8, 11 (Me.1971) (defendant not entitled to matters to be used in evidence by State); M.R.Crim.P., Rule 16(b)(3) ("Exception: Work Product. Disclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the mental impressions, conclusions, opinions, or legal theories of the attorney for the State or members of his legal staff."); Glassman, *Maine Practice* § 7.14 at 86 (1967) ("It is not the function of a bill of particulars to disclose in detail the evidence upon which the prosecution will rely, to pin down the prosecution, or to secure the legal theory upon which the prosecution will proceed.").

■ If each theory appears, at this point, to be supported by competent evidence, the State is justified in proceeding on several theories. The facts that the defense preparation must be multifaceted and that alibi witnesses, an expert pathologist, or a psychiatrist may or may not be necessary, depending on the State's theory at trial, are not sufficiently prejudicial to the defendant to require an election. As in *Pointer v. United States,* 151 U.S. 396, 404, 14 S.Ct. 410, 413, 38 L.Ed. 208, 212 (1894), on which the defendant relies, we find no potential for the defendant's being unfairly embarrassed, confounded, or prejudiced in her defense. *See also Pierce v. United States,* 160 U.S. 355, 356, 16 S.Ct. 321, 322, 40 L.Ed. 454, 455 (1896) (court refused to compel election when two counts differed only in stating manner in which murder was committed).

### B. *State v. Lagasse*

Under parts four and five of the defendant's test for entitlement to an election, she alleges that the State is simply using the depraved indifference charge as a "catch-all" to secure conviction because the State has failed to evaluate its case to determine whether, in fact, that charge is viable. The defendant agrees with the justice below that based on that conduct by the State, *State v. Lagasse* requires an election in this case. We disagree.

In *State v. Lagasse,* the indictment charged the defendant alternatively with intentional murder, section 201(1)(A), and with depraved indifference murder, section 201(1)(B). The defendant moved prior to trial to strike the charge of depraved indifference murder or to compel an election. The defendant argued that the evidence adduced at a pretrial hearing on bail and on motions to suppress could not support the depraved indifference charge. The motion was denied. At the beginning of the trial, the justice read the entire indictment to the jury. At the conclusion of the trial, the justice found the evidence insufficient to support the depraved indifference charge and refused to instruct on that theory.

We concluded in *Lagasse* that the inclusion of the alternative charge of depraved indifference murder had not prejudiced the defendant and did not constitute reversible error. We also offered a word of caution to prosecutors proceeding on this section of the Criminal Code and it is on this caveat that the defendant now relies:

> We recognize that at the time a case is presented to a grand jury the prosecutor may not be in full possession of all of the evidence relating to the manner in which the homicide was committed and that, therefore, in an excess of caution the prosecuting attorney may seek from the grand jury an indictment charging murder in the alternative form of depraved indifference as well as intentional and knowing murder. Nevertheless, by the time the case is ready to start trial, the prosecutor should be fully informed as to all of the circumstances surrounding the particular homicide and should carefully evaluate his evidence to determine whether in fairness to the defendant the charge of depraved indifference murder ought to be dismissed before the trial

commences. The statute recognizing the crime of depraved indifference murder is not a catchall enacted to make it easier to secure convictions. The purpose of the statute is to deal with those few instances in which, although the defendant did not act intentionally or knowingly, his conduct, objectively viewed, created such a high tendency to produce death that the law attributes to him the highest degree of blameworthiness. In fulfilling their ethical responsibility, prosecutors must recognize that depraved indifference murder constitutes a narrow and limited exception to the fundamental principle of our Criminal Code that a person may not be proven guilty of a crime without proof that he possessed one of the enumerated culpable states of mind.

410 A.2d at 540 (footnotes and citations omitted).

Unlike the *Lagasse* case, there have been no pretrial hearings in this case, such as a motion to suppress, at which evidence and testimony could be evaluated by the justice.[7] We cannot speculate on what may occur at trial; we need not speculate. We presume the State is aware of Me.Bar R., Rule 3.7(i)(1).[8] With its ethical responsibility firmly in mind, the State has represented, orally to the court and in affidavit, that it has "carefully evaluated all available evidence in this case" and that it is "satisfied that it is fair to place this alternative [depraved indifference murder] before a factfinder." The existence of that good faith representation is the true legacy of *Lagasse*.[9]

We would elucidate the potential consequences flowing from our cautionary note in *Lagasse*. When the prosecutor proceeds at trial on both section 201(1)(A) and (B) murder charges and the depraved indifference charge appears unsubstantiated by the evidence at the conclusion of the State's case, the remedy may be as in *Lagasse:* the justice may decline to instruct on the depraved indifference charge and it may be that no prejudice to the defendant will result. There are, however, other possible remedies available at that point to the trial justice in the informed exercise of judicial discretion. If serious prejudice to the defendant has resulted from the erroneous inclusion of the alternative charge, the justice may grant a mistrial. When the prejudice is overwhelming or when bad faith on the part of the prosecutor is apparent, the justice may as an alternative remedy dismiss all of the charges.

Although *Lagasse* did intend to strengthen the prosecutor's affirmative ethical duty to pursue only charges supported by evidence, the case did not intend enforcement of that duty through the penalty of a compelled election among charges. Unethical and dilatory practices by the State are more appropriately addressed by other available sanctions, which do not involve direct entrenchment upon the function and purposes of the substantive criminal law.[10]

Consequently, although the requirement of an election remains within the dis-

7. In this case, a pretrial conference and hearings on a motion to continue, a motion for release on bail pending trial, a motion for a bill of particulars, a motion to compel an election, a motion for extension of time, and a motion for reconsideration were held. Testimony was taken only at the hearing on the motion for bail.

8. 3.7(i) Duty of Public Prosecutor.
   (1) A lawyer shall not institute or cause to be instituted criminal charges when he knows, or it is obvious, that the charges are not supported by probable cause.

9. There is no basis for construing *Lagasse* as requiring the State to proceed only on one murder alternative or the other. *Joy,* 452 A.2d

at 411 n. 4 (evidence sufficient to support both alternative charges of murder); *Crocker,* 435 A.2d at 76 (ample evidence from which jury could have found that defendant intentionally or knowingly or by conduct manifesting a depraved indifference to the value of human life caused death of victim).

10. The State's misrepresentations concerning the additional indictments weighed heavily—and justifiably so—on the presiding justice's mind in the later proceedings in this case. We do not condone the prosecutor's conduct in that respect. At the September, 1982 hearing

cretion of the trial justice in the appropriate case, the fact that the defendant here does not know on which legal theory the State will be able to make its best case at trial for the defendant's conviction does not constitute prejudice sufficient to require an election between the alternative charges before trial. As noted, the most salient factual circumstance in this case is that the ultimate determination as to which of the two alternatives of criminal responsibility charged in the indictment will most aptly apply to the totality of evidence ultimately adduced at trial may well depend *in toto* upon the content of the defendant's testimony, if she elects to testify. Thus, no analytical resource or process available to the State in advance of trial will permit the State to determine safely which of the two alternatives will best fit that totality of evidence. In the face of that insuperable predictive difficulty, it is not unreasonable to impose upon the ·defense the not unusual burden of preparing a multifaceted defense to the prosecution's case. Under these cir-

cumstances, to require the State to forego, purely as a matter of guesswork, what may well be a viable, indeed, ultimately successful, theory of criminal responsibility is an abuse of discretion. In addition, the trial justice's conclusion that *Lagasse* requires an election in this case is an error of law. The order compelling the State to elect between murder alternatives must be set aside. *State v. Barden,* 432 A.2d 404, 411 (Me.), *cert. denied,* 454 U.S. 1088, 102 S.Ct. 648, 70 L.Ed.2d 624 (1981).

The entry is

Appeal sustained.

Order granting the Motion to Compel an Election reversed.

Remanded for proceedings consistent with this opinion.

All concurring.

on the State's motion for reconsideration of the granting of the motion to compel an election, the justice, with admirable candor, stated his perception of the events in the case:

As I recall it—the record will speak for itself; but as I recall it, [the prosecutor] represented to me that he needed a continuance so that he could and he intended to cause this matter to be presented to the grand jury. There was even some suggestion that perhaps the Court ... might wish to order a special grand jury brought in hearing this case ... It was represented that this matter would be presented—that the State would seek indictments against Mr. Bell and also against Cynthia Hickey for her aiding and assisting or whatever it was; and the next thing the Court knew, it was reading a newspaper article which suggested that [the prosecutor] had elected not to do that and the matter presumably was not even presented to the grand jury.

What you have said here this afternoon suggests that—I don't know what bearing that had on this proceeding, but there is some perception on the part of the Court, at least, that I was, in effect, taken in once in granting that continuance over the strenuous objections of the Defendant and I accepted the representations of the [prosecutor's] office in good faith; and that was the posture

that the case was left in. Having that experience in mind and having thus acquired a perception that the State is doing a considerable amount of floundering as far as its handling of this case is concerned, I·perhaps would be somewhat slow to accept those representations or similar representations in the future. I think it's unfortunate, but that nevertheless is the case.

We note that at the August, 1982 hearing on the State's motion for a second continuance, when the misrepresentations were made, defense counsel vigorously opposed the motion and argued that the defendant "should not be forced to be in jail any longer because the State did not take a look at their case a month ago or four months ago." The immediate response of the prosecutor was "no motion for a speedy trial on the record, your Honor." Apparently, no motion for a speedy trial was filed subsequently, which, under the State's rationale, validates the next three and one-half months of incarceration, for a total of thirteen months.

While we think that the justice was justified in being concerned about, and in finding unacceptable, the conduct of the prosecutor in this case, it was inappropriate for him to consider that conduct as any part of the basis for the imposition upon the State of a mandatory pretrial election of theories.