STATE of Maine

v.

Peter B. THOMAS.

Supreme Judicial Court of Maine.
Argued March 11, 1986.
Decided April 8, 1986.

Paul Aranson, Dist. Atty., Laurence Gardner, Asst. Dist. Atty. (orally), Portland, for State.

Murrough H. O'Brien (orally), Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS and WATHEN, JJ.

WATHEN, Justice.

Defendant Peter B. Thomas appeals from a conviction entered by the Superior Court (Cumberland County) upon a jury verdict finding him guilty of reckless conduct with the use of a dangerous weapon, 17–A M.R.S.A. §§ 211(1), 1252(4) (1983). On appeal, defendant challenges 1) the failure of the verdict form to delineate a crime under the Maine Criminal Code, 2) the sufficiency of the evidence to support the jury's verdict, 3) the trial justice's refusal during juror voir dire to ask two questions requested by defendant, and 4) certain pretrial rulings. We affirm the conviction.

## I.

Defendant's conviction stems from a shooting incident that occurred on the evening of September 21, 1982 near defendant's home on Sawyer Street in Portland. With minor exceptions that will be noted, defendant's version of events is undisputed.

On the afternoon of September 21, 1982, defendant noticed a green car parked in the vicinity of his home near railroad tracks that separate Irving Street from the rear portions of businesses fronting on Forest Avenue. Later that day while at home, defendant heard sharp words exchanged in the street and the slam of a car door. Proceeding to a window, he observed a number of males standing around the car he had noticed earlier. Defendant armed himself with a holstered automatic pistol and went outside to investigate. As he approached the car, defendant saw stereo equipment being loaded into the trunk and asked what was going on. No one responded to defendant's inquiry, and the group members got into the car and drove away. Defendant, suspecting a burglary, telephoned the police. Responding officers discovered a burglary at Maine Auto Accessories, a stereo store on Forest Avenue.

After talking to police officers at the stereo store defendant proceeded toward his residence. On his way, defendant saw the green car return on Sawyer Street and park facing against the direction of traffic so that the driver's door was next to the curb. A number of people got out of the car and, a short time later, began throwing rocks at defendant's house.[1] Hearing breaking glass and a high-pitched scream,[2] defendant began to chase the assailants toward their car, arriving at the car just as its four occupants finished getting in. Defendant positioned himself adjacent to the passenger door two to three feet from the car and, pointing his drawn pistol at the car, shouted "Freeze, m... f...." As the vehicle pulled out from the curb,[3] defend-

---

1. Two occupants of the vehicle testified at trial. They stated that the car had remained parked on Sawyer Street while they attended a party in a nearby wooded area. Both witnesses testified that they were very drunk at the time and that as they walked down Sawyer Street toward the car, one member of their group threw a rock and broke a window in defendant's house.

2. Later investigation revealed a broken window in the ground floor apartment in defendant's house. Defendant testified that he was later told by the wife of his tenant that her child uttered the scream. The tenant testified, however, that upon hearing the window break he let out a loud scream and that the child was in bed at the time.

3. Defendant testified that although nothing blocked its path, the car veered sharply toward the street where he was standing. The driver testified that a parked car blocked his path and

ant became "apprehensive" that the car would "sideswipe" him and decided to both move and shoot at the car's tire. He fired two shots, both of which penetrated the tire but did not strike the tire rim. The car left the curb, completely crossed the street, travelled down the sidewalk on the opposite side of Sawyer Street, and crashed into a pickup parked along the sidewalk. The occupants of the vehicle fled on foot. A short time later, the police arrived and arrested the defendant.

In addition to relating the events described above, defendant testified as to his mental impressions during the incident. Defendant stated that when he gave chase, he was reasonably convinced, based on having heard breaking glass and a scream, that harm had been done to his tenants. He also testified that his purpose in chasing the group was to effect an arrest based upon the attack on his house and upon his suspicion that the people he was chasing had committed the stereo store burglary. Finally, the parties stipulated that when defendant confronted the vehicle, he had probable cause to believe that the green car and at least some of its occupants had been involved in the burglary.

## II.

The presiding justice instructed the jury as to the elements included in the crime of reckless conduct as defined in 17–A M.R. S.A. § 211 (1983). In addition, he instructed with regard to the allegations of the indictment, which, if proved, would lead either to an enhanced sentencing classification or the imposition of a minimum mandatory sentence.[4] In an effort to delineate the findings available to the jury with regard to the sentence enhancing factors, the court, without objection, submitted a writ-

ten verdict form that provided the following three options:

1. Not Guilty of Any Offense; or
2. Guilty of Reckless Conduct with the Use of a Dangerous Weapon, namely a Firearm, Against a Person or Persons; or
3. Guilty of Reckless Conduct with the use of a Dangerous Weapon.

The jury returned a verdict in accord with the third option, finding defendant guilty of reckless conduct with the use of a dangerous weapon. The jury made the finding necessary for the offense to be converted to a Class C crime but rejected the finding that would have invoked a minimum mandatory sentence.

Defendant does not dispute that the jury was properly instructed. Rather he argues that the third option on the verdict form does not adequately define a criminal offense because it fails to set forth that the reckless conduct must endanger a person or persons. When a written verdict form is used, it need not set forth allegations with the specificity required of an indictment. The original indictment includes sufficient allegations to charge reckless conduct with the use of a dangerous weapon. Under proper instructions, the jury found defendant guilty of that offense. The alleged deficiency in the written verdict form is of no consequence.

## III.

Defendant makes two discrete arguments in challenging the sufficiency of the evidence to support the guilty verdict. First, he argues that the evidence is insufficient to establish the elements of reckless conduct beyond a reasonable doubt. In addition, he argues that the evidence is insufficient to disprove beyond a reason-

that he had to back up and then cut hard to the right to get the vehicle into the street.

**4.** The indictment charged reckless conduct with the use of a dangerous weapon, namely, a firearm, against a person. Reckless conduct is a Class D offense. 17–A M.R.S.A. § 211(2) (1983). Section 1252(4) converts the offense to a Class C

crime if committed with the use of a dangerous weapon. In addition, subsection (5) provides for a minimum mandatory sentence for a Class C crime committed with the use of a firearm against a person. 17–A M.R.S.A. § 1252(4), (5) (1983).

able doubt the existence of the defense of justifiable use of deadly force, as was the State's burden once the trial justice had ruled the defense to be generated by the evidence.

 Evidence is sufficient to establish the commission of a crime if a jury, viewing that evidence in a light most favorable to the State, rationally could have found all elements of the offense to be proven beyond a reasonable doubt. *State v. Hardy,* 489 A.2d 508, 510 (Me.1985). The elements of reckless conduct are reckless creation of a substantial risk of serious bodily injury to another person. 17–A M.R.S.A. § 211 (1983). Recklessness in turn is defined as a conscious disregard of a risk that conduct will cause a result, in this case the creation of a substantial risk of serious bodily injury to another. Furthermore, the conscious disregard of the risk must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in light of the nature and purpose of the person's conduct and the circumstances known to him. 17–A M.R.S.A. § 35(3)(A), (3)(C) (1983).

 Defendant argues that in light of his purpose of effecting the arrest of people he had seen attack his house and who he had probable cause to believe had committed a burglary, his conduct cannot be characterized, beyond a reasonable doubt, as constituting a gross deviation from reasonable conduct. The jury, however, was not compelled to accept defendant's *post hoc* testimony concerning his purpose. From the evidence, the jury reasonably could have concluded that defendant acted out of anger caused by the attack on his house. Assuming the jury rejected defendant's claim that he acted with the purpose of effecting an arrest, the record amply supports a finding that his actions amounted to a gross deviation from reasonable conduct. Even assuming the jury accepted defendant's testimony that he acted with the purpose of effecting an arrest, a jury could have rationally found beyond a reasonable doubt that shooting the tire of a moving automobile with four people aboard amounted to a gross deviation from reasonable conduct.

Defendant also argues that the evidence was insufficient to prove that his conduct caused the creation of a substantial risk of serious bodily injury to another person. The record amply supports a conclusion that defendant's conduct created such a risk. The evidence in this case supports the jury's conclusion that all of the elements of reckless conduct were proven beyond a reasonable doubt.

 We move next to defendant's claim that the evidence was insufficient to negate the defense of justifiable use of deadly force to effect a citizen's arrest. The presiding justice instructed the jury on this defense in accordance with the statutory definition, which reads:

4. A private person acting on his own is justified in using:

. . . .

B. Deadly force only when he reasonably believes such force is necessary:

. . . .

(2) To effect a lawful arrest or prevent the escape from such arrest of a person who in fact

(a) has committed a crime involving the use or threatened use of deadly force, or is using a deadly weapon in attempting to escape; and

(b) the private citizen has made reasonable efforts to advise the person that he is a private citizen attempting to effect an arrest or prevent the escape from arrest and has reasonable grounds to believe the person is aware of this advice or he reasonably believes that the person to be arrested otherwise knows that he is a private citizen attempting to effect an arrest or prevent the escape from arrest.

17–A M.R.S.A. § 107(4)(B)(2) (1983). Once sufficient evidence is introduced to generate an issue regarding justification, the State carries the burden of negating the existence of justification beyond a reason-

able doubt. *State v. Lagasse*, 410 A.2d 537, 542 (Me.1980). Merely because evidence is sufficient to generate an issue as to an asserted defense, however, does not mean that the jury is compelled to believe that evidence. *Id.*

■ The only evidence that defendant utilized deadly force to effect an arrest consists of his own testimony. As noted above, the jury was not compelled to believe this testimony and, from the evidence, could rationally have found some other motivation for defendant's actions. In addition, the jury rationally could have found that defendant did not make reasonable efforts to advise the occupants of the car that he was a private citizen attempting to effect an arrest or that defendant could not have reasonably believed the occupants of the car otherwise knew the same. We conclude that the evidence was sufficient to negate the asserted defense beyond a reasonable doubt.

### IV.

■ Defendant next challenges the refusal of the presiding justice to ask the following questions on juror voir dire:

Generally, would you feel uneasy in the presence of a person wearing a holstered handgun?

Do you agree with the law that prohibits a citizen from owning, possessing or carrying a handgun without a license?

As the presiding justice noted in rejecting the first question, the subject of attitudes toward handguns was extensively covered in other, more specific questions that the court put to the jury at defendant's request. As to the second question, the court pointed out that it incorrectly states Maine law, *see* 25 M.R.S.A. § 2003 (Pamph. 1985–1986), and afforded defendant an opportunity to rephrase the question, which he refused. We find the court's actions to be well within the broad discretion afforded to a presiding justice in determining the scope of voir dire. *See State v. Lovely*, 451 A.2d 900, 901 (Me.1982).

### V.

Prior to trial, defendant moved to dismiss the indictment on the ground that his testimony before the grand jury was obtained in violation of his fifth amendment rights against self-incrimination because the State failed to inform him adequately of those rights. Defendant now claims that the Superior Court erred by denying his motion to dismiss. The State responds that even if a constitutional violation occurred, dismissal of the indictment is not an appropriate remedy. We agree.

■ The United States Supreme Court has held that an indictment valid on its face is not subject to challenge on the ground that it is based on information obtained in violation of the defendant's fifth amendment privilege against self-incrimination. *United States v. Calandra*, 414 U.S. 338, 344–45, 94 S.Ct. 613, 618–19, 38 L.Ed.2d 561 (1974); *Lawn v. United States*, 355 U.S. 339, 349–50, 78 S.Ct. 311, 317–18, 2 L.Ed.2d 321 (1958). This Court has previously acknowledged, citing *Calandra*, that an indictment may be returned on the basis of evidence not competent for presentation at trial. *State v. St. Clair*, 418 A.2d 184, 186 n. 2 (Me.1980). Because dismissal of the indictment would not have been an appropriate remedy even if a constitutional violation existed, the court did not err in denying defendant's motion to dismiss.

Finally, defendant claims reversible error in two rulings made by the presiding justice during the hearing on defendant's motion to dismiss. First, the court impounded a tape recording that defendant had surreptitiously made of his testimony before the grand jury, but only after allowing defendant to testify with the aid of a transcript of that recording. Second, the motion justice refused to allow defendant to call to the stand the prosecutor who presented the case to the grand jury. We need not consider whether the motion justice committed any error because, dismissal of the indictment not being an available remedy, any error that might have occurred would have been harmless.

The entry is:
Judgment affirmed.

All concurring.