**STATE of Maine**

v.

**Kenneth DROWN, Sr.**

Supreme Judicial Court of Maine.

Argued June 16, 1982.

Decided July 12, 1982.

David W. Crook, Dist. Atty., Alan Kelley, Deputy Dist. Atty. (orally), John Alsop, Asst. Dist. Atty., Augusta, for plaintiff.

Nale & Nale, Richard C. Nale (orally), Waterville, for defendant.

Before McKUSICK, C. J., NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.

**McKUSICK, Chief Justice.**

One count of the indictment charging defendant Kenneth Drown, Sr., with statutory rape[1] alleged that the crime occurred "[b]etween the first day of January, 1980, and the thirty-first day of December, 1980," that is, at some time during the calendar year 1980; and another count of statutory rape alleged the crime had again occurred "[b]etween the first day of January, 1981, and the thirtieth day of November, 1981," that is, at some time during the first eleven months of 1981. Four other counts of the indictment charged gross sexual misconduct[2] and unlawful sexual contact,[3] alleged also to have occurred on some otherwise unspecified dates within those 12-month and 11-month periods.[4] The Superi-

---

1. 17–A M.R.S.A. § 252 (Supp.1981).

2. 17–A M.R.S.A. § 253 (Supp.1981).

3. 17–A M.R.S.A. § 255 (Supp.1981).

4. In full, the indictment read:

 Indictment for Violation
 17–A of M.R.S.A. section 252
 Rape (A)

 *Count 1* THE GRAND JURY CHARGES: Between the first day of January, 1981, and the thirtieth day of November, 1981, at Oakland, in the County of Kennebec and State of Maine, Kenneth Drown, Sr. did engage in sexual intercourse with one [victim's name], a female who had not in fact attained her 14th birthday, to wit, the said [victim] being of the age of 12 years, and the said [victim] not being his spouse.

 Title 17–A, Section 253
 Gross Sexual Misconduct (A)

 *Count 2* And your Grand Jurors aforesaid, upon their oath aforesaid, do further present that between the first day of January, 1981, and the thirtieth day of November, 1981, at Oakland, in the County of Kennebec and State of Maine, Kenneth Drown, Sr. did engage in a sexual act with a female child, to wit, one [victim's name], the said [victim] not having, in fact, attained her 14th birthday, to wit, the said [victim] being of the age of 12 years, and the said [victim] not being his spouse.

 Title 17–A, Section 255
 Unlawful Sexual Contact (C)

 *Count 3* And your Grand Jurors aforesaid, upon their oath aforesaid, do further present that between the first day of January, 1981, and the thirtieth day of November, 1981, at Oakland, in the County of Kennebec and State of Maine, Kenneth Drown, Sr. did intentionally subject one [victim's name], the said [victim] not being his spouse, to an unlawful sexual contact, and the said [victim] had not, in fact, attained her 14th birthday and the said Kenneth Drown, Sr. being at least 3 years older, to wit, 35 years.

 Indictment for Violation
 17–A of M.R.S.A. section 252
 Rape (A)

 *Count 4* THE GRAND JURY CHARGES: Between the first day of January, 1980, and the thirty-first day of December, 1980, at Oakland, in the County of Kennebec and State of Maine, Kenneth Drown, Sr. did engage in sexual intercourse with one [victim's name], a female who had not, in fact, attained her 14th birthday, to wit, the said [victim] being of the age of 11 years, and the said [victim] not being his spouse.

 Title 17–A, Section 253
 Gross Sexual Misconduct (A)

 *Count 5* And your Grand Jurors aforesaid, upon their oath aforesaid, do further present that between the first day of January, 1980, and the thirty-first day of December, 1980, at Oakland, in the County of Kennebec and State of Maine, Kenneth Drown, Sr. did engage in a sexual act with a female child, to wit, one [victim's name], the said [victim] not having, in fact, attained her 14th birthday, to wit, the said [victim] being of the age of 11 years and the said [victim] not being his spouse.

or Court (Kennebec County) dismissed the indictment on the ground that it was not sufficiently specific as to the dates of the alleged crimes. With the Attorney General's approval, the State has appealed pursuant to 15 M.R.S.A. § 2115–A(1) (1980 & Supp.1981), which authorizes the State to appeal certain pretrial orders in a criminal case. We do not reach the merits of the State's appeal. We must first consider whether the Law Court is required by section 2115–A to entertain this appeal. From aught that appears in this record, the State could have readily avoided any impairment of the prosecution by obtaining an amended indictment.[5] In such circumstances, the State's appeal from the Superior Court order dismissing the original indictment is improvident.

In moving to dismiss the indictment, defendant argued that it was so vague as to the times of the offense that he could not adequately prepare his defense and that he would not be protected against double jeopardy. In responding at the hearing on that motion, the State asserted that Drown had molested his victim, said to be his stepdaughter, once or twice a week over the combined 23-month period referred to in the indictment. More specific pleading would require an enormous number of counts in the indictment, and further, said the State's attorney, the young victim might be unable in her testimony to be more specific as to the dates of the crimes than that they took place weekly in that period. However, the State has not, either below or on appeal, contradicted the facial intendment of each count of the indictment to charge only a single criminal act, not a succession of acts through the year 1980 and the first eleven months of 1981. The State also acknowledges, as it must, that at trial, in order to convict defendant on any count, it will be required to prove at least one identified instance of criminal conduct of the type charged in that count.

█ At the outset, we would do well to identify the simple alternative to appeal that was apparently open to the State as a means of preventing the frustration of the prosecution of defendant. As a general proposition, an indictment will withstand a pretrial motion for dismissal if its time allegation is introduced by the preposition "on or about." *See* Forms 4–11, M.R.Crim.P. Here, it appears that all that the State needed to do to avoid the issue it seeks to have decided on this appeal was to amend the indictment to substitute, in count 1 for example, a time allegation of "on or about June 15, 1981," or such other single date during the year 1981 as appeared best supported by the victim's grand jury testimony.[6] Time is not an element of the offense sought here to be charged, except as necessary to establish that the victim was underage at the time it was committed. *See, e.g., State v. Hathorne*, Me., 387 A.2d 9 (1978); *State v. Miller*, Me., 253 A.2d 58 (1969). At trial the victim's memory of dates may indeed prove to be imprecise; but if that imprecision results in a variance between the indictment and the proof, such a variance will not be fatal in the absence of prejudice to defendant. *See State v. Carmichael*, Me., 444 A.2d 45 (1982); *State v.*

---

Title 17–A, Section 255
Unlawful Sexual Contact (C)
*Count 6* And your Grand Jurors aforesaid, upon their oath aforesaid, do further present that between the first day of January, 1980, and the thirty-first day of December, 1980, at Oakland, in the County of Kennebec and State of Maine, Kenneth Drown, Sr. did intentionally subject one [victim's name], the said [victim] not being his spouse, to an unlawful sexual contact, and the said [victim] had not, in fact, attained her 14th birthday and the said Kenneth Drown, Sr. being at least 3 years older, to wit, 34 years.

5. *See State v. Hathorne*, Me., 387 A.2d 9, 11–13 (1978), on the question whether the State would be required to resubmit the indictment to the grand jury.

6. If the State wished the indictment to reflect the State's claim that Drown molested his victim repeatedly over a period of twenty-three months, the indictment could have been redrawn to charge those multiple offenses in multiple counts using the "on or about" time allegation in each. Such a recast indictment would have resisted dismissal, although as we have cautioned in *State v. Gray*, Me., 407 A.2d 19, 20 n.1 (1979), the State should be prepared to prove each crime that it charges.

*Terrio*, Me., 442 A.2d 537 (1982). In alleging the time of the offense, the indictment need only be sufficiently specific that it enables defendant to prepare his defense and protects him against further jeopardy for the same offense. *State v. Charette*, 159 Me. 124, 127, 188 A.2d 898, 900 (1963).

Even if the State could have obtained the revised indictment only by returning to the grand jury, *see* n. 5 above, that retracing of steps, though perhaps a nuisance, certainly involved much less delay and expense than an appeal. In the case at bar we take judicial notice that the grand jury that issued the indictment on January 5, 1982, is even now still sitting; thus, it might prove unnecessary even to recall the young victim to testify again before the grand jury.

Under circumstances where the State had readily available to it a means of avoiding the consequences of the Superior Court's dismissal of an indictment, is the Law Court nonetheless compelled by 15 M.R.S.A. § 2115–A(1) to hear and decide the State's appeal from that dismissal? We conclude that it is not; that such an appeal does not promote the salutary purpose for which the legislature has authorized pretrial appeals by the State and that it runs directly counter to principles of appellate review that both the legislature and this court have long recognized.

Our conclusion derives, in the first instance, from the legislative language itself. *See Central Maine Power Co. v. Public Utilities Commission*, Me., 405 A.2d 153, 159 (1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Section 2115–A(1) permits State appeals from "an order of the court prior to trial which suppresses any evidence . . . ; from a pretrial dismissal of an indictment, information or complaint; or from any *other* order of the court prior to trial which . . . has a reasonable likelihood of causing either serious impairment to or termination of the prosecution." [7] (Emphasis added) Plainly it is not every suppression of evidence or every dismissal of an indictment that automatically must be reviewed by the Law Court whenever requested by the prosecutor with the Attorney General's approval. Such a construction would be a wooden parsing of the statutory language and would disregard the legislature's emphasis upon the purposes [8] intended to be served by permitting pretrial appeals by the State: namely, that the State should have a way of obtaining a correction through appeal of any pretrial decision that "has a reasonable likelihood of causing either serious impairment to or termination of the prosecution." In each case, the Attorney General, in deciding whether to approve an appeal by the State,[9] and this court, if the attempted appeal gets this far, must consider whether under all the circumstances the lower

7. 15 M.R.S.A. § 2115–A(1) provides in full:

> **Appeals prior to trial.** An appeal may be taken by the State in criminal cases on questions of law from the District Court and from the Superior Court to the law court: From an order of the court prior to trial which suppresses any evidence, including, but not limited to, physical or identification evidence or evidence of a confession or admission; from an order which prevents the prosecution from obtaining evidence; from a pretrial dismissal of an indictment, information or complaint; or from any other order of the court prior to trial which, either under the particular circumstances of the case or generally for the type of order in question, has a reasonable likelihood of causing either serious impairment to or termination of the prosecution.

> Those portions of section 2115–A that deal with appeals after trial are not before us in this

case. Thus, we are not here concerned with the limits on post-trial appeals by the State that were the subject of *State v. Howes*, Me., 432 A.2d 419 (1981).

8. Subsection (6) of 15 M.R.S.A. § 2115–A requires that:

> The provisions of this section shall be liberally construed to effectuate its purposes.

9. 15 M.R.S.A. § 2115–A(5) provides:

> **Approval of Attorney General.** In any appeal taken pursuant to subsections 1 or 2, the written approval of the Attorney General shall be required; provided that if the attorney for the State filing the notice of appeal states in the notice that the Attorney General has orally stated that the approval will be granted, the written approval may be filed at a later date.

court's ruling has produced a significant setback to the State's attempt to bring the accused to justice. If this court, even when it approaches that threshold question with the liberal or sympathetic view mandated by the legislature, cannot find any reasonable likelihood that the State will be handicapped in trying the defendant, we must declare the State's appeal to be improvident. This court will decide for itself whether the appeal meets the statutory standard, even though the appeal has previously received the Attorney General's approval. *Cf. State v. Placzek*, Me., 380 A.2d 1010, 1012 (1977) (lower court's certification, even with agreement of both the State and the defendant, that question of law on report is "of sufficient importance or doubt," not conclusive on Law Court).

 Our construction of section 2115–A(1) is reinforced by two deeply ingrained principles of appellate review, each of which involves important public policy considerations. First, there is in our jurisprudence a general requirement that a party in order to bring an appeal must have suffered a legal detriment as a result of the order of the tribunal below. That requirement furthers judicial economy by allowing the appellate court to avoid dissipating its limited resources in hearing and deciding unnecessary cases. Furthermore, the role of the judicial branch in the framework of government is to decide actual cases and controversies, and not to render advisory opinions except under those restricted circumstances in which they are permitted under article VI, section 3 of the Maine Constitution. Many examples can be cited of this pervasive principle of appellate review. A criminal defendant is by statute permitted to appeal a judgment, ruling, or order of the Superior Court only if he is aggrieved thereby, *see* 15 M.R.S.A. § 2115 (1980); and the logic of the popular goose-and-gander rule suggests that in order to appeal under section 2115–A the State should also be required to show aggrievement, in the sense that the State really needs relief if it is to avoid "serious impairment to or termination of the prosecution." On the civil side also, an appellate court will not entertain an appeal unless the result below has a direct and substantial adverse effect upon the appellant. *See Jamison v. Shepard*, Me., 270 A.2d 861, 862–63 (1970). Typically, civil appeal statutes expressly extend the right to appeal only to an aggrieved party. *See, e.g.*, 14 M.R.S.A. § 1851 (1980) (civil appeals from Superior Court); 4 M.R.S.A. § 401 (1979) (appeals from probate courts to Superior Court under former statute). However, even where the appeal statute contains no express aggrievement requirement, the Law Court has read the statute as importing one. *See, e.g., Eastern Maine Electric Cooperative v. Maine Yankee Atomic Power Co.*, Me., 225 A.2d 414, 415 (1967), construing 35 M.R.S.A. § 303 (governing appeals from the Public Utilities Commission) prior to the 1975 amendment explicitly limiting an appeal to a person "who is adversely affected by the final decision of the commission." The fact that the appellant is an agency of the State of Maine does not immunize it from the requirement that it establish that it is aggrieved by the decision below. *See In the Matter of Pittston Oil Refinery*, Me., 375 A.2d 530 (1977) (Department of Marine Resources and two other State agencies); *Nichols v. City of Rockland*, Me., 324 A.2d 295 (1974) (State Parole Board).

Second, the strong public policy against piecemeal appellate review also supports our construction of section 2115–A(1). *See State v. Bassford*, Me., 440 A.2d 1059, 1061 (1982). Although in form any dismissal of an indictment or other charging instrument is a final judgment, in practical effect a dismissal that is ordered merely because of a readily correctible defect in the charging instrument is only an interlocutory step in the process of bringing the accused to trial. When the dismissal of a particular indictment means only that the State must get an amendment of the indictment, the dismissal does not in actuality constitute any final termination of the defendant's "prosecution" in the broad sense of that statutory term. In both civil and criminal cases, interlocutory review is disfavored for strong public policy reasons; review of a judgment

that is not final, whether in form or reality, impedes the progress of litigation and places additional demands upon scarce appellate resources. *See, e.g., Toussaint v. Perreault*, Me., 388 A.2d 918 (1978) (report under M.R.Civ.P. 72(c) dismissed as improvident); *cf. State v. Placzek, supra* (improvident report under M.R.Crim.P. 37A(a) decided only for judicial economy). The public policy considerations disfavoring interlocutory appeals are particularly insistent in criminal cases. The defendant has a constitutional right to a speedy trial, *see* Me. Const. art. I, § 6; and obviously, the members of the public, including both the victims of crime and taxpayers, have a great interest in bringing persons accused of crime to justice promptly and efficiently. Appeals taken by the State from pretrial orders inevitably delay the commencement of trial and add to the public cost. Even though in this case the Law Court has heard the State's appeal on an expedited basis, well over two months have still elapsed since the indictment was dismissed. If the appeal had been handled on a normal schedule, it would not have been heard until five months after the dismissal. The appeal has also caused unnecessary consumption of public resources, on the part of the Law Court and also of counsel for the State and for defendant, both of whom are compensated out of the public treasury. Because of such delay and expense, it is important that the State's appeal not be entertained in the absence of "serious impairment to or termination of the prosecution." Such is the plain mandate of section 2115–A(1).

When properly used, section 2115–A serves a beneficent purpose in permitting Law Court review of preliminary questions of law in situations where a criminal prosecution is threatened by a lower court ruling prior to trial. The legislature never intended, however, that section 2115–A(1) should permit the State to get an answer to a question of criminal pleading where the State is able to replead to avoid any legal

problem without in any way hampering the prosecution. We have recently warned of the folly of the State's needlessly persisting in defending a charging instrument of questionable validity. *See State v. MacKerron*, Me., 446 A.2d 420, 422 (1982). *See also State v. Carter*, Me., 444 A.2d 37, 38 n.2 (1982) (omission from complaint of word "intoxicating" in "operating under the influence of intoxicating liquor" charge). In circumstances where the prosecution can promptly and easily go forward without impairment through amendment of the indictment,[10] a State's appeal from a dismissal of the original indictment is improvident.

In the present case this court recognizes that there may be some possibility that the State after the passage of time will not be able to obtain from the grand jury a new indictment avoiding the dispute that resulted in dismissal of the original indictment. For example, essential testimony of the young victim may have become currently unavailable and the grand jury may be unwilling to reindict on the basis alone of its memory of her testimony given before them in January. Since we here for the first time delineate the circumstances in which a State's appeal may be dismissed as improvident, we will retain this appeal on our docket for whatever further action may be appropriate after the State has diligently sought a new indictment from the grand jury.

The entry is:

This appeal is retained on the docket of the Law Court; the State is ordered to report on or before September 1, 1982, on its efforts to obtain a new indictment and the results of those efforts.

All concurring.

---

**10.** In future cases, if any uncertainty exists whether an amendment of the charging instrument can be obtained, the State can preserve its appeal rights by filing a notice of appeal within the prescribed time and thereafter withdrawing it if successful in getting the amendment.