**STATE of Maine**

v.

**Scott DOUCETTE.**

Supreme Judicial Court of Maine.

Argued June 6, 1988.

Decided July 29, 1988.

James E. Tierney, Atty. Gen., Michael N. Westcott, James P. Howaniec (orally) Asst. Attys. Gen., Augusta, for State.

Judy R. Potter (orally), Cape Elizabeth, Thomas Connolly, Portland, for defendant.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

Defendant Scott Doucette is awaiting trial in Superior Court (Cumberland County) on an indictment for murder, 17–A M.R.S.A. § 201(1)(A) (1983). The State asked the court for a pretrial evidentiary ruling that statements made by a witness, one Mark Parker, whom it proposes to call at Doucette's trial, will if his trial testimony turns out to be inconsistent therewith be fully admissible as nonhearsay even though it does not satisfy the requirements imposed by M.R. Evid. 801(d)(1)(A) for the admission of such prior statements. The Superior Court denied the State's request and ruled that the prior inconsistent statements would be admissible solely for the purpose of impeaching the witness's credibility. The State appeals the Superior Court's *in limine* order under 15 M.R.S.A. § 2115–A (1980; Supp.1987). Although the legislature may well have vested the Law Court with jurisdiction broad enough to encompass this pretrial appeal, established prudential principles governing appellate review counsel against our exercise of that jurisdiction in the specific circumstances here present. We accordingly dismiss the State's appeal.

On July 24, 1986, juveniles Scott Doucette and Mark Parker were arrested for the murder of 14–year–old Theresa Duran. Following protracted proceedings to determine that Doucette and Parker would be tried as adults, a Cumberland County grand jury returned murder indictments against both. On November 11, 1986, while incarcerated at the Cumberland County jail, Parker told a group consisting of a state police officer, an assistant attorney general, and Parker's own attorney that Doucette admitted to him that he had murdered Theresa Duran. Parker made those statements during a pre-polygraph interview at the jail and was not under oath at the time. During the polygraph examination that followed, Parker repeated that allegation, again without being under oath. On May 18, 1987, a Superior Court jury acquitted Parker of Theresa Duran's murder. After his acquittal Parker, testifying twice under oath, changed his story. Both at Doucette's bail hearing on May 29, 1987, and at a suppression hearing in Doucette's case on August 14, 1987, Parker testified that he had been lying when he made the statements concerning Doucette's admissions and that Doucette had never admitted killing Theresa Duran.

On September 9, 1987, the State filed with the Superior Court a pretrial memorandum of law in support of the admissibility as substantive evidence in Doucette's murder trial of Parker's two earlier unsworn statements that Doucette had admitted killing Duran. At a hearing two days later, the presiding justice treated the State's memorandum as a motion *in limine,* denied that motion, and ruled that if Parker testified his prior inconsistent statements would be admissible for the purpose of impeachment, and for only that purpose. The State appeals that order.

At the outset we must determine whether we have jurisdiction over this interlocutory appeal by the State. Our analysis begins with the recognition that

> [w]henever the authority of the Law Court to exercise reviewing power is brought into issue the foundational guide to decision is the principle that the Law Court is a statutory Court and its powers to review cases are entirely and exclusively those plainly conferred by statute.

*Papapetrou v. Edgar,* 290 A.2d 202, 204 (Me.1972). The State's ability to appeal is controlled by 15 M.R.S.A. § 2115–A. Prior to the enactment of that statute, the State had no right at all to appeal adverse decisions. *See State v. Fernald,* 381 A.2d 282, 285 (Me.1978). Section 2115–A as it currently reads vests the Law Court with jurisdiction over State's appeals from several

specifically enumerated types of pretrial orders, as well as

> from any other order of the court prior to trial which, either under the particular circumstances of the case or generally for the type of order in question, has a reasonable likelihood of causing either serious impairment to or termination of the prosecution.[1]

To determine whether in "the particular circumstances of the case" a State's appeal from a pretrial order meets the jurisdictional requirements of section 2115–A, we look for "any reasonable likelihood that the State will be handicapped in trying the defendant." *State v. Drown,* 447 A.2d 466, 471 (Me.1982). Section 2115–A(6) mandates that we liberally construe the language of the State's appeal statute[2] in order to "make the State's right of appeal as plenary as is constitutionally permissible." *State v. Howes,* 432 A.2d 419, 423 (Me.1981). Under such a reading of section 2115–A, we cannot conclude that the State is barred as a matter of lack of jurisdiction from appealing the pretrial evidentiary ruling of the Superior Court.

■ In support of its requested evidentiary ruling, the State submitted an affidavit outlining its largely circumstantial case against Doucette. The State's case links Doucette to Duran's murder primarily through contradictory statements made by Doucette to the police and through admissions he allegedly made to Parker and to another potential witness, Chipper Chase. If the State is restricted in the use it may make of Parker's prior unsworn statements, it would be left with Chase as the only witness testifying to Doucette's admissions to having murdered Duran. Because the defense at Parker's trial had substantial success in impeaching the credibility of Chase as a witness, the State asserts that the loss of Parker's prior inconsistent statements as substantive evidence of Doucette's guilt would have a reasonable likelihood of seriously impairing the prosecution of Doucette. The relaxed jurisdictional test of *State v. Drown,* 447 A.2d 466, whether there is a reasonable likelihood that the State will be handicapped in trying the defendant, appears to be satisfied here.

■ That conclusion, however, does not end the matter. Even if the legislature has given us jurisdiction over an appeal, the question always remains whether in any particular case it is inappropriate for us to exercise that jurisdiction; whether in that case the State acted improvidently in prosecuting the appeal. For example, despite the broad jurisdictional grant of 4 M.R.S.A. § 57 (1979) that the Law Court may hear "questions of law arising on reports of cases," we have made clear that

> the Law Court retains power to make its own independent determination whether in all the circumstances of a given case its decision "on report" would be consistent with the Court's basic functions as an appellate tribunal.

*State v. Foley,* 366 A.2d 172, 173 (Me.1976). Similarly, the grant of jurisdiction to the Law Court over the appeal by any defendant in a criminal case (and by any party in a civil case) who is aggrieved by "any judgment, ruling, or order" whatever of the Superior Court (15 M.R.S.A. § 2115 (Supp.1987); 14 M.R.S.A. § 1851 (1980))

---

1. 15 M.R.S.A. § 2115–A(1) provides in full:

   **1. Appeals prior to trial.** An appeal may be taken by the State in criminal cases on questions of law from the District Court and from the Superior Court to the law court: From an order of the court prior to trial which suppresses any evidence, including, but not limited to, physical or identification evidence or evidence of a confession or admission; from an order which prevents the prosecution from obtaining evidence; from a pretrial dismissal of an indictment, information or complaint; or from any other order of the court prior to trial which, either under the particular circumstances of the case or generally for the type of order in question, has a reasonable likelihood of causing either serious impairment to or termination of the prosecution.

2. 15 M.R.S.A. § 2115–A(6) provides that: "The provisions of this section shall be liberally construed to effectuate its purposes."

does not mean that we must entertain an appeal if it does not satisfy the final judgment rule developed by this court over the years to protect the integrity and the economy of the judicial process. 2 Field, McKusick & Wroth, *Maine Civil Practice* §§ 73.-1–73.5 (2d ed. 1970; Supp.1981); 1 Cluchey & Seitzinger, *Maine Criminal Practice* § 37.9 (1987). We routinely discharge reports that are improvidently granted by trial courts, and with a few judicially defined exceptions we routinely dismiss appeals from interlocutory orders, even though by legislative grant we have undoubted statutory jurisdiction over any report and any appeal. *Id. See, e.g., State v. Bassford,* 440 A.2d 1059, 1061–62 (Me.1982) (report of criminal case discharged as improvident); *Myerowitz v. Howard,* 507 A.2d 578, 579–81 (Me.1986) (appeal from preliminary injunction dismissed); *Northeast Inv. Co., Inc. v. Leisure Living Communities, Inc.,* 351 A.2d 845, 847–51 (Me. 1976) (judge-made "collateral order" exception to final judgment rule permits interlocutory appeal of real estate attachment). The legislature has left it to us to fine-tune the definition of the appropriate occasions for withholding exercise of broadly granted jurisdiction.

This case is controlled by the identical considerations that led us to declare improvident the interlocutory report attempted in the criminal case, *State v. Placzek,* 380 A.2d 1010 (Me.1977). Our discussion in *Placzek* of the considerations applied to an interlocutory report by agreement between the State and the defendant is directly relevant *mutatis mutandis* to this interlocutory appeal by the State. In *Placzek* we stated:

Report of questions of law prior to final disposition of the case by the trial court represents a major breach in the "final judgment" rule. That rule reflects weighty policy considerations as to proper judicial administration. Multiple trips to the Law Court make for added delay and expense in a litigation process already too slow and too costly. Even though the agreement of both parties may in a civil case go far to eliminate any need for this court to concern itself with such delay and expense, the public in a criminal case has a direct and substantial interest in avoiding both. In the overwhelming majority of criminal cases, the public bears the expense of both the prosecution and the defense; and furthermore, the public is injured by any avoidable delay in convicting the guilty and acquitting the innocent. This court recognizes it has a special responsibility to protect those public interests even though the prosecution, the defense, and the trial court may all agree, each for its own reasons, to report a legal question to the Law Court. It is not without significance that one of the best statements in Maine of the policy reasons for the "final judgment" rule appears in *Hand v. Nickerson,* [148 Me. 465, 469, 95 A.2d 813, 816 (1953) ], in which the Law Court was laying down self-imposed limits on the report of cases to it. Furthermore, excessive use of the report mechanism "would transform the Law Court into an advisory board for the direction of the business of the court at nisi prius, a function the Law Court cannot assume." *Fidelity & Casualty Co. v. Bodwell Granite Co.,* 102 Me. 148, 152, 66 A. 314, 316 (1906). If assumption of such a role appeared undesirable to our predecessors in 1906, the multiplied and multiplying caseload of the 1977 Law Court makes it entirely impossible.

*Id.* at 1013 (footnote omitted).

In exactly the same way, excessive use of interlocutory appeals by the State "would transform the Law Court into an advisory board for the direction of the business of the court at nisi prius, a function the Law Court cannot assume." *Id.* Also, as we stated in *State v. Drown,* 447 A.2d at 472:

The public policy considerations disfavoring interlocutory appeals are particularly insistent in criminal cases. The defendant has a constitutional right to a speedy trial, *see* Me. Const. art. I, § 6; and

obviously, the members of the public, including both the victims of crime and taxpayers, have a great interest in bringing persons accused of crime to justice promptly and efficiently. Appeals taken by the State from pretrial orders inevitably delay the commencement of trial and add to the public cost.... The appeal [may] cause[ ] unnecessary consumption of public resources, on the part of the Law Court and also of counsel for the State and for defendant, both of whom are compensated out of the public treasury.

Section 2115–A(5), in permitting a State's appeal only on the Attorney General's approval, impliedly anticipates that the State will exercise special restraint in taking interlocutory appeals. But the Attorney General's approval for such an appeal does not relieve us from our own responsibility to examine each case independently to determine whether entertaining the appeal is consistent with the strong public policy against piecemeal appeals and the impossibility of this court's serving as an advisory board to trial lawyers and judges.

■ Viewed in light of those strong public policy considerations, the present State's appeal is improvident. The evidentiary question raised by the appeal could readily have been answered by study of the existing law. *Cf. State v. Placzek*, 380 A.2d at 1014 (report improvident if taken on a question that "has been decided or could readily be answered by study of the existing law"). Article VIII of the Maine Rules of Evidence specifically spells out what is

hearsay and what is not hearsay, and declares that "[h]earsay is not admissible except as provided by law or by these rules." M.R.Evid. 801, 802. The Supreme Judicial Court in its rulemaking capacity has barred itself when sitting as the Law Court from fashioning additional exceptions to the hearsay rule on a case-by-case basis.[3] Evidence Rule 801(d) specifically speaks to the limited circumstances when a prior statement by a witness is not hearsay; and no amount of the liberal construction mandated by Evidence Rule 102 can transform Parker's statements in connection with his polygraph test into statements "given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition." M.R. Evid. 801(d)(1)(A). An interlocutory appeal that involves a question with an answer readily available from research is improvident and becomes even more obviously so when, as here, the answer is plainly adverse to the appellant.

The appeal in the case at bar is distinguished from that taken in *State v. Shellhammer*, 540 A.2d 780 (Me.1988). There we entertained a State's appeal from a District Court judge's *in limine* ruling, made on the day of trial of an operating-under-the-influence charge, that 29 M.R.S.A. § 1312(8–A) (Supp.1987) in abrogating the *corpus delicti* rule on proof of operation of a motor vehicle by the defendant was an unconstitutional intrusion on the judicial power. In *Shellhammer* the judge's ruling concerned the admissibility of the only evidence the State had of one essential element of the charge, a situation that the legislature in eliminating the *corpus delicti*

---

3. The last-resort argument made by the State's reply brief, that the Law "Court should amend the Maine Rules of Evidence to provide for the substantive admissibility of prior inconsistent statements not made under oath," reveals a lack of comprehension of the difference between the Law Court's limited statutory jurisdiction over appeals and the Supreme Judicial Court's inherent authority, recognized by 4 M.R.S.A. § 9–A (1979), to make rules of evidence for the courts. The Law Court, which has exclusively appellate jurisdiction, has no power to amend the Rules of Evidence promulgated by the Supreme Judicial Court. Furthermore, the Supreme Judicial Court has withheld from the courts, including even the Law Court, any authority to develop case-by-case further exceptions to the hearsay rule in the way the Federal Rules of Evidence permit the federal courts to do. *See* F.R. Evid. 803(24). Rulemaking is a legislative-type function performed by the Supreme Judicial Court with the assistance of advisory rules committees operating under procedures designed to permit the views of the bar generally to be considered on proposed amendments. *See* "Operating Procedures for Rulemaking," Me.Rptr., 434–440 A.2d LXXXI (Dec. 16, 1981).

rule on that issue apparently found to occur with some frequency. The State in deciding whether to attempt an interlocutory appeal should realistically assess its chances of success, to see whether the possibility it will prevail is great enough to justify the delay and costs inevitably caused by the appeal. The State prevailed on its *Shellhammer* appeal, a prospect never realistically open to the State on its present appeal.

In contrast to the *Shellhammer* appeal, the State's appeal of an *in limine* evidentiary ruling in the circumstances of the case at bar is plainly improvident under established principles of appellate review.

The entry is:

State's appeal dismissed.

All concurring.