**STATE of Maine**

v.

**Steven C. PATTERSON.**

Supreme Judicial Court of Maine.

Argued May 11, 1994.
Decided Dec. 21, 1994.

Michael Povich, Dist. Atty., Steven A. Juskewitch (orally), Asst. Dist. Atty., Machias, for the state.

Richard W. Hall (orally), Hall & Lunn, Bangor, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

The State appeals from an order entered in the Superior Court (Washington County, *Marsano, J.*) granting Steven C. Patterson's motion to exclude statements that he made voluntarily to a police detective in the course of interviews before and after a polygraph test. The State argues that the court erred in concluding that the statements were not admissions, not relevant, and unfairly prejudicial pursuant to M.R.Evid. 801(d)(2)(A), 401, and 403 respectively. Patterson responds that the State's appeal does not meet the jurisdictional requirements of 15 M.R.S.A. § 2115–A(1) (1980) or, in the alternative, that the appeal is improvident. We agree with the State's contentions and vacate the court's order.

In May 1992, Dale Keegan, a Maine State Police Detective and Polygraph Examiner, conducted a polygraph test on Patterson, who had been accused of sexually abusing a ten-year old boy. According to Keegan's report, the accuracy of which is not disputed, Patterson made the following statements during the pretest interview:

(1) His only physical contact with the alleged victim occurred when he gave him a back rub two or three times on an exercise mat in his office.

(2) He "sat on [the victim's] legs, and rubbed his back with [his] shirt off so he could give him a more semantical and good feeling rub."

(3) He is a homosexual and has had sexual fantasies about the victim and other males.

During the post test interview, Patterson never denied having sex with the victim. The following statements and colloquies also occurred:

(1) Patterson stated that he did not "remember it happening."

(2) He stated that "[t]he only other thing that I can tell you is that when I got off

[the victim], I felt strange.... There is a very remote possibility of a fugue state."[1] Later in the interview, however, he stated, "I don't think a fugue state is a possibility because [the victim] wasn't upset afterwards. I had a strange feeling. That is all I am aware of."

(3) When asked whether the "strange feeling" was "like any other homosexual activities he had been involved in," Patterson paused and said, "It was like my head was swimming."

(4) Patterson stated he would not go to court for this case because he did not want to make the victim testify.

(5) Patterson stated that "he would be going to jail for this." When Keegan asked Patterson to explain this statement, he said, "[the victim] is a good witness."

(6) Patterson stated he had the "Ronald Reagan Syndrome," pointing out that they both say "I don't recall." When Keegan said that Reagan "did a lot of illegal things, just like you," Patterson agreed.

The post test interview ended when Patterson asked for his attorney. Patterson does not dispute that his statements to Keegan were voluntary.

In July 1992, an indictment was issued charging Patterson with one count of gross sexual assault, 17–A M.R.S.A. § 253(1)(B) (Supp.1993), and two counts of unlawful sexual contact, 17–A M.R.S.A. § 255 (Supp.1993). Patterson entered pleas of not guilty.

Prior to trial Patterson filed a motion in limine seeking to exclude the statements he made to Keegan before and after the polygraph test. Patterson argued that he could not adequately explain his statements without referring to the test, and that to do so would be extremely prejudicial.

During the hearing on Patterson's motion, which took place on the Friday afternoon before the Monday on which the trial was to commence, the State conceded that Patterson's statement that he was a homosexual should be excluded. The court ruled that the

---

1. A fugue is "a state of psychological amnesia during which the subject seems to behave in a conscious and rational way, although upon return to normal consciousness he cannot remember the period of time nor what he did during it." *Webster's New World Dictionary* 563 (2d ed. 1974).

remaining statements would be excluded pursuant to M.R.Evid. 403 because they were more prejudicial than probative. As the court stated:

It's a 403 analysis, because if I get to 403, I definitely am going to keep them out ... I just think that the probative value suggests that even if they were statements that were admissible with respect to the affirmative obligation of the State to prove its case, the way in which they are said is excludable under [403]. If I get to a 403 ruling, I will rule in his favor under [403].

The court later entered a written order in which it ruled, *inter alia,* as follows:

(1) the contested statements were not admissions of wrongdoing and "their impact would only be to prejudice the jury"; and (2) even if the statements were relevant pursuant to M.R.Evid. 402, they are "excludable" pursuant to M.R.Evid. 403.

On the date of this order, the State filed a notice of appeal pursuant to 15 M.R.S.A. § 2115–A and M.R.Crim.P. 37B. The State alleged that the granting of Patterson's motion in limine has "a reasonable likelihood of causing serious impairment or termination of the prosecution." The Attorney General filed a written approval of the appeal.

## I. *The Interlocutory Appeal*

■ Title 15 M.R.S.A. § 2115–A(1) provides that an appeal may be taken by the State with written approval of the Attorney General from any pretrial order which, "either under the particular circumstances of the case or generally for the type of order in question, has a reasonable likelihood of causing either serious impairment to or termination of the prosecution." To determine whether a State's appeal from a pretrial order meets the requirements of section 2115–A, we look for "any reasonable likelihood that the State will be handicapped in trying the defendant." *State v. Doucette,* 544 A.2d 1290, 1292 (Me.1988) (quoting *State v. Drown,* 447 A.2d 466, 471 (Me.1982)).

We have construed section 2115–A "with the following two principles of appellate review firmly in mind: (1) the appealing party must have suffered a legal detriment as a result of the lower court's order and (2) the strong public policy against piecemeal appellate review." *State v. Hickey,* 459 A.2d 573, 578 (Me.1983) (citing *Drown,* 447 A.2d at 471–72). The Attorney General's approval for an appeal does not relieve us of our own responsibility "to examine each case independently to determine whether entertaining the appeal is consistent with the strong public policy against piecemeal appeals and the impossibility of this court's serving as an advisory board to trial lawyers and judges." *Doucette,* 544 A.2d at 1294.

Patterson argues that the State's case will not be impaired by the exclusion of his statements to Keegan because there are other witnesses who will be testifying for the prosecution. First, the trial court already ruled that the alleged victim is competent to testify. Second, other witnesses will testify to Patterson's opportunity to commit the alleged offense.[2] Patterson concludes that since the order did not impair or terminate the prosecution, this appeal must be dismissed for lack of jurisdiction. We disagree.

As the State points out, the test for determining whether we have jurisdiction pursuant to section 2115–A is "whether there is a reasonable likelihood that the State will be handicapped in trying the defendant as a result of the order ... being appealed." *See Doucette,* 544 A.2d at 1292. Although in the present case the exclusion of the statements might not terminate the prosecution, there is a "reasonable likelihood" that the exclusion will impair the State's case against Patterson. If Keegan were not allowed to testify, there would most likely be no evidence of Patterson's sexual fantasies of the alleged victim, Patterson's state of mind and his inability to recall significant portions of the contact, an admission that he did "illegal

---

**2.** Although Patterson's brief is not clear as to the identity of these witnesses, he could be referring to Maine State Trooper Steven Pickering. During an interview with Pickering, Patterson stated that he had given the alleged victim a back rub and that his actions had been "misconstrued" as sexual abuse. Patterson sought the exclusion of these statements in another motion in limine, which the court denied. Patterson also asserts that the alleged victim's foster mother would testify as to Patterson's "extensive contact"·with the boy.

things," and an admission that the victim was a good witness. Aside from Patterson, the record contains no evidence that another witness would be able to testify about these subjects.

Patterson also argues that the State's appeal should be dismissed as improvident. He asserts that by entertaining the present appeal, the Court would be transformed into an advisory board for the direction of the trial court's business. *See Doucette,* 544 A.2d at 1293. Again we disagree.

In *Doucette,* we held that "[a]n interlocutory appeal that involves a question with an answer readily available from research is improvident and becomes even more obviously so when ... the answer is plainly adverse to the appellant." 544 A.2d at 1294. The resolution of the present appeal depends primarily on the issue of whether the trial court abused its discretion in excluding the statements pursuant to M.R.Evid. 403. This inquiry depends on the specific facts and circumstances of this case and is not readily answered by a study of existing law. We have found no cases standing for the proposition that statements made before and after a polygraph test should be excluded where the defendant can explain those statements only by referring to the test. To the contrary, in *State v. Bowden,* 342 A.2d 281, 285 (Me. 1975), we held that although polygraph test results are inadmissible, "admissions made by an accused after the polygraph testing ... are admissible if such admissions are found to be voluntary beyond a reasonable doubt." Since Patterson does not dispute the issue of voluntariness, precedent is on the State's side.

Patterson could have also argued that the State's appeal from the order granting his motion in limine is premature because the court might have exercised its discretion in favor of the State during the trial. *See State v. Pinkham,* 586 A.2d 730, 731 (Me.1991) (ruling on motion in limine does not become final until the evidence is offered at trial). Although we would normally hesitate to entertain an appeal from an order granting a

motion in limine for this very reason, *see id.,* the Superior Court justice who granted the motion in the instant case was to preside at Patterson's trial the following week and clearly stated his intention to exclude the contested statements. Not only did the justice state that he was "not going to let them in," he also told defense counsel that he "could go to the bank with that." Under these circumstances, we find that the State's appeal is not premature. *See State v. Shellhammer,* 540 A.2d 780, 782 n. 1 (Me.1988) (appeal from denial of State's motion in limine was not premature because "the record clearly indicates a commitment by the District Court to stand by its ruling at the trial").

## II. *The Court's Ruling*

We review the trial court's evidentiary rulings for clear error or an abuse of discretion. *State v. Shuman,* 622 A.2d 716, 718 (Me.1993). The question of relevancy of proffered evidence is reviewed under a clear error standard. *State v. Robinson,* 628 A.2d 664, 666 (Me.1993). The decision to admit or exclude evidence is more frequently reviewed under an abuse of discretion standard "because the question of admissibility frequently involves the weighing of probative value against considerations militating against its admissibility." *Id.; see also* M.R.Evid. 403.

### A. *Admissions*

The trial court's order stated that Patterson's "statements are not admissions ... of any wrongdoings; their impact would only be to prejudice the jury." The State argues that this conclusion is erroneous because "any statement by a defendant in a criminal case which, in conjunction with proof of other facts and circumstances, tends to prove guilt is an admission." *See State v. Jones,* 405 A.2d 149, 151 (Me.1979). Moreover, the State asserts that Patterson's statements need not be inculpatory to qualify as an admission pursuant to M.R.Evid. 801.[3] We agree.

Pursuant to M.R.Evid. 801(d)(2), Patterson's statements were admissions, not hear-

---

**3.** Rule 801 provides that "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... his own statement, in either his individual or a representative capacity...."

say. Moreover, they clearly qualify as "statement[s] ... which, in conjunction with proof of other facts and circumstances, [tend] to prove guilt." *Jones,* 405 A.2d at 151. We therefore hold that the court committed clear error in finding that these statements were not admissions.

## B. *Relevance*

■ Both the State and Patterson assert in their briefs that the court determined that the statements were not relevant. The order, however, states as follows:

> [M.R.Evid. 402] provides: "Evidence which is not relevant [is] not admissible." Even if it were relevant and therefore admissible it is, in my view, excludable under [M.R.Evid. 403] and I would exclude it.

Contrary to the parties' assertions, it does not appear that the court reached the issue of relevance. Instead, it ruled that even if the statements were relevant, they would be excluded pursuant to Rule 403.[4]

## C. *Unfair Prejudice*

■ The State argues that the court abused its discretion in excluding the statements pursuant to Rule 403. The State concedes that the statements will be prejudicial or harmful to Patterson, but correctly asserts that the appropriate inquiry pursuant to Rule 403 is not whether evidence harms the defendant, but whether its probative value is substantially outweighed by the danger of *unfair* prejudice.

Patterson responds that the court did not abuse its discretion. First, he asserts that the substance of his statements can be introduced through other witnesses.[5] Second, he asserts that the court's ruling was based primarily on Rule 403. Thus, even if the court erred on the issues of admissions and relevance, it was still within the court's dis-

cretion to exclude the evidence pursuant to Rule 403.

We question how the court could have engaged in a meaningful analysis of the statements' probative value or prejudicial effect in the absence of a trial. For example, the State may have called other witnesses (such as the alleged victim, the foster mother, or Officer Pickering), who might have testified extensively on some of the topics to which Keegan could have testified. After hearing this evidence, the court would have been in a better position to analyze whether Keegan's testimony should be excluded pursuant to Rule 403. We therefore caution trial courts to refrain from making Rule 403 determinations prior to trial.

■ Moreover, it is difficult to determine whether the court abused its discretion pursuant to Rule 403 because the record contains nothing to indicate that the court considered the statements' probative value or whether it found that any resulting prejudice would be *unfair* to Patterson. *Cf. State v. Lovely,* 451 A.2d 900, 901 (Me.1982) ("A proper exercise of discretion ... is not evidenced merely by the fact that a decision was rendered."). The fact that the evidence would be prejudicial is not a sufficient basis for its exclusion. *See* Richard H. Field & Peter L. Murray, *Maine Evidence,* § 403.1 at 4–14 (3rd ed. 1992) ("It is only the danger of *unfair* prejudice that the judge is entitled to weigh against probative value.").

We also question the proffered basis for Patterson's motion—that the admission of the statements would be unfair because he would have to take the witness stand and refer to the polygraph test in order to explain them. Even if Patterson honestly believes that he must refer to the test, the rules of evidence do not afford him protection from making what is, in reality, a choice in trial strategy. *Cf. State v. LeClair,* 425 A.2d 182,

---

4. Assuming that the court did rule that Patterson's statements were not relevant, we agree with the State's contention that such a ruling would be clear error. *See* M.R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

5. Although that is true with respect to the issue of opportunity, the record does not disclose any other witnesses (aside from Patterson) who could testify about his sexual fantasies, his quasi-admissions of guilt, or his acknowledgement that the victim would be a "good witness."

186 (Me.1981) (where defendant is willing to run risk that proffered evidence would do him more harm than good, jury should be permitted to decide what should be concluded from evidence, even though trial court determines that probative value of evidence is outweighed by danger of unfair prejudice); *Maine Evidence*, § 403.1 at 4–17 ("The [trial] court must afford a criminal defendant wide latitude to present all the evidence relevant to the *defendant's defense. And, if the defense itself offers evidence potentially prejudicial to it, Rule 403 does not offer basis for exclusion on that ground.").

For these reasons, we sustain the State's appeal and hold that the trial court abused its discretion in granting Patterson's motion in limine.[6] The entry is:

Order vacated. Remanded for further proceedings consistent with the opinion herein.

WATHEN, C.J., and RUDMAN, J. concurring.

GLASSMAN, Justice, with whom CLIFFORD, Justice, joins, dissenting.

I must respectfully dissent. This appeal by the State is from a ruling on a motion *in limine.* Because such a ruling does not become final until the evidence is offered at trial, we should be *very* reluctant to entertain such interlocutory appeals. *See State v. Pinkham,* 586 A.2d 730, 731 (Me.1991) (Law Court should not entertain appeals by the State from *in limine* rulings). In *State v. Doucette,* 544 A.2d 1290 (Me.1988), we set forth in detail both the public policy considerations and practical reasons disfavoring interlocutory appeals and why those considerations are particularly insistent in criminal cases.

"[T]he defendant has a constitutional right to a speedy trial, *see* Me. Const. Art. I, § 6, and obviously, the members of the public, including both the victims of crime and taxpayers, have a great interest in bringing persons accused of crime to justice promptly and efficiently. Appeals taken by the State from pretrial orders inevi-

tably delay the commencement of trial and add to the public cost.... The appeal [may cause] unnecessary consumption of public resources, on the part of the Law Court and also counsel for the State and for defendants...."

544 A.2d at 1293–94 (quoting *State v. Drown,* 447 A.2d 466, 472 (Me.1982)). Accordingly, review by this Court of pretrial rulings is rare and reserved for the most serious problems of admissibility.

The evidentiary questions raised by this appeal readily can be distinguished from that presented to us in *State v. Shellhammer,* 540 A.2d 780 (Me.1988), where the trial court on the day of trial erroneously ruled on the motion *in limine* that the enactment of 29 M.R.S.A. § 1312(8–A) (Supp.1993) was an unconstitutional intrusion on the judicial power and, on that ground disallowed, the admission of the only evidence the State had of one essential element of the charged offense. It was clear on the record that the trial court's order established that without the evidence at issue the State could not otherwise prove its case. This is not the situation here.

In this case, the State can well proceed to trial without the evidence excluded by the trial court's *in limine* ruling. The alleged victim is competent to testify, and the State concedes that other evidence can be presented to show that Patterson had the opportunity to commit the offense. Indeed, the State has available to it evidence of other statements made by Patterson that he gave the alleged victim a back rub that was "misconstrued" as sexual abuse. In my view, the trial court's exclusion of the statements made by Patterson, none of which is a direct admission of guilt, does not handicap the State's prosecution to the extent that we should entertain this appeal. I would resist " 'transform[ing] the Law Court into an advisory board for the direction of the business of the court at *nisi prius,* a function the Law Court cannot assume.' " *Doucette,* 544 A.2d at 1293 (quoting *Fidelity & Cas. Co. v. Bodwell Granite Co.,* 102 Me. 148, 66 A. 314

---

**6.** In reaching this holding, we expressly decline to resolve the issue of whether the trial court

would be within its discretion to admit or exclude such evidence during the trial.

(1906)). I would dismiss the appeal as improvident.